# EDWARDS ANGELL PALMER & DODGE LLP

750 Lexington Avenue   New York, NY  10022   212.308.4411   *fax* 212.308.4844   eapdlaw.com



Vincent J. Witkowsky
212.912.2828
*fax* 212.308.4844
vwitkowsky@eapdlaw.com

## MEMO ENDORSED

September 24, 2007

**RECEIVED SEP 25 2007 CHAMBERS OF RICHARD M. BERMAN U.S.D.J.**

*[Handwritten endorsement:]* PC to respond with 2-3 pp letter by 10/2/07. We can discuss it at 10/18/07 conference.

SO ORDERED:
Date: 9/25/07   Richard M. Berman
Richard M. Berman, U.S.D.J.

**VIA FEDERAL EXPRESS**

The Honorable Richard M. Berman
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 650
New York, New York 10007-1312
(212) 805-6715

Re:   **Seaton Insurance Co., et al. v. Cavell USA, Inc., et al. Case No. 1:07-CV-07032 (RMB)**

Dear Judge Berman:

We represent defendants Cavell USA Inc. f/k/a Ken Randall America, Inc. f/k/a Eastgate, Inc. ("Cavell US") and Ken Randall, individually ("Randall"), and write to request a pre-motion conference in accordance with Rule 2(A) of your individual practices.

**Essential Factual Background**:  In March 1999 and September 2000, respectively, Cavell US (then known as Eastgate Inc.) entered into an Agreement Relating to Administration of Run-Off Business (the "Administration Agreements") with Seaton Insurance Company and Stonewall Insurance Company (collectively, the "Companies"), which had been acquired by Dukes Place Holdings LP ("Dukes Place").[1]  See Complaint, at Exs. 1, 2.  In connection with the run-off, the Companies purchased reinsurance coverage (the "Reinsurance Agreements") from National Indemnity Company ("NICO").  Id. at ¶¶13, 25.  Thereafter, Cavell US entered into an agreement with NICO (the

---

[1] Insurance companies that are no longer issuing new policies, but rather merely administering and paying claims on policies already issued, are referred to as being "in run-off."  Cavell US provides run-off services to such companies and their owners.

*[Filed stamp:]* DOCUMENT ELECTRONICALLY FILED  DOC #: ___  DATE FILED: 9/25/2007

EDWARDS ANGELL PALMER & DODGE LLP

Hon. Richard M. Berman
September 24, 2007
Page 2

"Collaboration Agreement"), pursuant to which certain claims administration functions related to the Companies run-off were delegated to NICO. See Complaint, at Ex. 3.

Cavell US provided run-off services to the Companies until 2006, when Cavell US and Randall, among others, entered into a commercial disengagement with the Companies and Dukes Place pursuant to a document described as the "Term Sheet." As stated in the first paragraph of that agreement, the purpose of the Term Sheet was to govern "the orderly termination of the contractual and other commercial relationships amongst them," including the Administration Agreements. See Complaint, at Ex. 4. Under the Term Sheet, the Companies agreed to release and discharge Cavell US and Randall of all claims and demands arising out of their commercial relations (including the Administration Agreements), except in the case of fraud. Id. at ¶13. The Term Sheet contains a mandatory forum selection clause, which provides that it "shall be governed by and construed in accordance with English law and the parties submit to the exclusive jurisdiction of the English courts." Id. at ¶29.

**Anticipated Motions to Dismiss**: We request permission to file a motion to dismiss the Complaint based upon several grounds set forth by Rule 12 of the Federal Rules of Civil Procedure.

First, the Complaint should be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). The introductory paragraph of the Term Sheet establishes its broad ambit and provides that it encompasses all contractual agreements between the parties, including the Administration Agreements. Thus, pursuant to the unambiguous forum selection clause in the Term Sheet, an English court must resolve any and all disputes between Cavell US or Randall and the Companies. Alternatively, the

EDWARDS ANGELL PALMER & DODGE LLP

Hon. Richard M. Berman
September 24, 2007
Page 3

court should decline subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), as a means of enforcing the forum selection clause.

Next, although the Complaint is vaguely drafted, the Companies' causes of action against Cavell US and Randall are based upon Cavell's cession of certain claims functions to NICO. However, the Administration Agreements expressly provide that Cavell US "shall have the authority to delegate to any person such functions it deems necessary for the performance of its obligations under this Agreement." See Complaint, at Exs. 1, 2 at ¶8.1 (emphasis added). Similarly, Paragraph 2.3 of the Seaton Administration Agreement expressly references NICO's involvement in claims administration. Id. at Ex. 2, at ¶2.3. Thus, the Companies' cannot assert any cognizable action for fraud, as Cavell US and Randall's sub-delegation of claims-related functions to NICO was expressly agreed to and allowed by the Companies.

Moreover, the Companies were aware that, at the time they entered into the Administration Agreements, they had already delegated certain claims administration powers to NICO under the Reinsurance Agreements, including the process of pre-funding claims. As such, and for the reasons set forth above, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

*Vincent J. Vitkowsky*
Vincent J. Vitkowsky

cc: Shawn L. Kelly, Esq. (via E-mail)
Lawrence I. Brandes, Esq. (via E-mail)
John F. Finnegan, Esq. (via E-mail)
Michael P. Thompson, Esq. (via E-mail)
Robert W. DiUbaldo, Esq. (via E-mail)