UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEATON INSURANCE COMPANY AND
STONEWALL INSURANCE COMPANY,

    Plaintiffs,

    versus

CAVELL USA INC. f/k/a KEN RANDALL
AMERICA, INC. f/k/a EASTGATE, INC. and
KEN RANDALL, individually,

    Defendants.

No. 1:07-CV-07032 (RMB) (KNF)

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS

Vincent J. Vitkowsky
Ira G. Greenberg
EDWARDS ANGELL PALMER &
   DODGE LLP
Attorneys for Defendants
750 Lexington Avenue, 8th floor
New York, NY  10022
(212) 308-4411

NYC_287367_1

## TABLE OF CONTENTS

                                                                Page

INTRODUCTION ................................................................................................................1

ARGUMENT .......................................................................................................................1

I.    THE ENGLISH COURTS SHOULD RESOLVE THIS DISPUTE. ......................1

II.   THE COMPLAINT FAILS TO STATE A CLAIM. ...............................................6

## TABLE OF AUTHORITIES

Page

**Cases**

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,
  98 F.3d 13 (2d Cir. 1996) ..................................................................................12

Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918 (2d Cir. 1977) ..........9

Danann Realty Corp. v. Harris,
  5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1958) ...........................................13

First Nat'l State Bank v. Irving Trust Co.,
  91 A.D.2d 543, 457 N.Y.S.2d 17 (1st Dep't 1982),
  aff'd, 59 N.Y.2d 991, 466 N.Y.S.2d 682, 453 N.E.2d 1099 (1983) ...............................11

Gaidon v. Guardian Life Ins. Co. of Am.,
  94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) ...........................................9

Huron St. Realty Corp. v. Lorenzo,
  19 A.D.3d 450, 798 N.Y.S.2d 438 (2d Dep't 2005)......................................................13

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) .................................................10

Light v. Taylor, 2007 WL 274798 (S.D.N.Y.) ................................................................5

Lombardozzi v. Debroux, 1992 WL 24687 (N.D.N.Y.) ......................................................6

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) .............................................5, 6

Mandel v. Fischer, 205 A.D.2d 375, 613 N.Y.S.2d 381 (1st Dep't 1994)..........................9

McGovern v. T.J. Best Bldg. & Remodeling Inc.,
  245 A.D.2d 925, 666 N.Y.S.2d 854 (3d Dep't 1997) ..................................................12

Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171 (2d Cir. 2007).................12

Naturopathic Laboratories Int'l, Inc. v. SSL Americas, Inc.,
  18 A.D.3d 404, 795 N.Y.S.2d 580 (1st Dep't 2005)....................................................11

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) .................................................................10

Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007).............................................4, 5

Ross v. DeLorenzo, 28 A.D.3d 631, 813 N.Y.S.2d 756 (2d Dep't 2006) ........................12

**Other Authorities**

Corbin on Contracts § 866 (West 1951).............................................................................6

Fed. R. Civ. P. 9(b)..............................................................................................................7

3 Williston on Contracts (3d ed. 1960)...............................................................................9

Plaintiffs Seaton Insurance Company and Stonewall Insurance Company cannot maintain this action. Seaton and Stonewall try to evade their general release in favor of defendants Cavell USA Inc. and Kenneth Randall by relying on a carveout for fraud claims, but they cannot hide the fact that their claim is, at best, one for breach of contract and therefore within that release.[1] Not only do they not state a claim, but they also agreed as part of the winding up of the parties' commercial relationships that any claims that they were not then releasing would be brought in the English courts. This Court should dismiss on that ground in the alternative.

## ARGUMENT

### I.    THE ENGLISH COURTS SHOULD RESOLVE THIS DISPUTE.

This Court should dismiss the action without reaching the merits pursuant to the forum selection clause in section 29 of the Term Sheet, exhibit 4 to the complaint. (Though so described, the Term Sheet is in fact a contract.). That clause provides, "The Term Sheet shall be governed by and construed in accordance with English law and the parties submit to the exclusive jurisdiction of the English Courts." Seaton and Stonewall do not contend that that clause is invalid or unenforceable. The only question is its ambit.

Earlier this year, the Court of Appeals for this Circuit in <u>Phillips v. Audio Active Ltd.</u>, 494 F.3d 378 (2d Cir. 2007), extensively addressed such clauses. Three holdings from <u>Phillips</u> are pertinent here. First, the issue is one of contract interpretation,

---

[1] As the law requires, Cavell and Mr. Randall are assuming the truth of the factual allegations of the complaint for this motion, even though they deny their validity and expect to prove their falsity if the action were to go forward in any forum. More particularly, the claim that Seaton and Stonewall did not know of the prefunding of claims, the collaboration agreement, or NICO's involvement in their claims administration is demonstrably false. Though only the tip of the iceberg, Seaton and Stonewall have now conceded that they were fully aware of the supposed fraud when they executed the Term Sheet.

with the initial focus on the language of the contract. Id. at 386, 389-90. Second, contracting parties are free to agree that their forum selection clause will govern claims that do not sound in contract.[2] Id. at 390; see id. at 388-89. And third, a court interpreting such a clause should "discount[] the precedential weight of cases that deal with dissimilarly worded clauses." Id. at 390 (citing John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1075 (3d Cir. 1997) (Alito, J.)).

Given the Court of Appeals' Phillips decision, much of Seaton's and Stonewall's discussion of case law in connection with this branch of Cavell's motion is immaterial. Thus, for example, not only does the holding of Light v. Taylor, 2007 WL 274798 (S.D.N.Y.), that a copyright claim cannot arise out of a contract directly conflict with the later decision in Phillips, 494 F.3d at 388, but the contractual language in Light, 2007 WL 274798, at *6, is different from, and more restrictive than, that in section 29 of the Term Sheet.

Indeed, the operative language of the Term Sheet is as expansive as can be imagined, as the types of dispute that it covers are not limited by subject matter. The Supreme Court of the United States addressed a similar situation – and a similar clause – in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), a seminal opinion that pointed the federal judiciary toward the full enforcement of forum selection clauses. The clause in that case, involving an international towing contract, read, "Any dispute arising must be treated before the London Court of Justice." Id. at 2. When Zapata argued that

---

[2] Thus, Cavell's and Mr. Randall's statement that the clause provides an exclusive forum for disputes arising from the parties' "contractual relationships" in no way implies, as Seaton's and Stonewall's brief (at 15) incorrectly asserts, that Cavell and Mr. Randall "apparently recognize that the Term Sheet's forum selection clause is limited in scope and governs only contract claims."

the clause did not include <u>in rem</u> actions, the Court gave the argument the short shrift that it deserved. In words of direct significance here, the Supreme Court held, "[T]he language of the clause is clearly mandatory and all-encompassing." <u>Id.</u> at 20. The language here is no less "all-encompassing."

Even if the language were deemed impliedly limited to matters within the ambit of the Term Sheet itself, that ambit is sufficiently broad to cover the dispute at hand. The Term Sheet provides for the winding up of commercial relations between two groups of entities involved in the insurance business – Seaton and Stonewall and their parents and affiliates, on the one hand, and Cavell and its parents and affiliates, on the other. <u>See</u> Complaint, Exh. 4, Preamble. No matter how Seaton and Stonewall might characterize their claims, there can be no doubt that they arose from the parties' commercial relations. It would be completely reasonable to conclude that the parties wished to adopt a single body of law and designate a single forum to deal with any disputes among them going forward.

Moreover, the Term Sheet provides for a release in favor of Cavell and Mr. Randall, from which are excepted "fraud" claims. <u>Id.</u> ¶ 13. Any such fraud claim, such as the one purportedly made in this case, will necessarily involve the construction of the term "fraud" in the release's exception. Nor is this necessity purely theoretical: As the declaration of Stephen Hofmeyr, Q.C., an English barrister, notes, English law does not generally regard failures to disclose in a business context as fraud; yet the complaint rests heavily upon just such alleged failures. Hofmeyr Decl. ¶ 24 (and cases cited).[3]

---

[3] All cases that Mr. Hofmeyr's declaration cites are provided for the Court's convenience as exhibits to the declaration of Ira G. Greenberg.

Seaton's and Stonewall's brief (at 14) effectively concedes Cavell's and Mr. Randall's conclusion. In discussing Lombardozzi v. Debroux, 1992 WL 24687 (N.D.N.Y.), they describe as "a common sense test for determining whether a claim is subject to a contract's forum selection clause": "[I]f a claim required an analysis of the cont[r]act containing the forum selection clause, the claim was subject to the clause."

Nor does the unsworn statement of Andrew Lydiard, QC, another English barrister, submitted on behalf of Seaton and Stonewall alter the analysis one whit.

First, insofar as Mr. Lydiard recites the general rules of contract construction applicable in England, the parties have no disagreement. Notably, however, Mr. Lydiard cites no English cases that address forum selection clauses in general, let alone that are remotely on all fours with the case before this Court. Indeed, to the extent that Seaton and Stonewall (Brief at 12 n.3) are correct in asserting that "there is no genuine conflict between US and UK law as respects the application of the Term Sheet's forum selection clause," Mr. Lydiard's statement becomes irrelevant.

Second, Mr. Lydiard's exposition of English law is incomplete, and the cited position in Seaton's and Stonewall's brief is not fully correct. As Mr. Hofmeyr's declaration (¶¶ 8-12) demonstrates with reference to the only two month old Premium Nafta decision of the House of Lords, England's highest court, English law erects a strong presumption in favor of a single forum to adjudicate disputes; "[a]ny jurisdiction clause should therefore be construed in accordance with this presumption unless the language makes it clear that certain questions were intended to be excluded."[4] Id. ¶ 8.

---

[4] Although Premium Nafta itself deals with arbitration, its rule of law does not rest on that fact. To the contrary, as Mr. Hofmeyr's declaration (¶¶ 10-12) notes, the House of Lords

Third, insofar as Mr. Lydiard purports to construe the contract provision in question, he is usurping this Court's role. See Hofmeyr Decl. ¶ 23 (and case cited). Nothing makes him any more expert in doing so than would any common law attorney or judge with knowledge of the relevant legal principles. As Mr. Hofmeyr's declaration (id.) points out, an English judge seeking guidance on United States law would receive expert opinion about our country's legal rules and principles but would not entertain expert advice on how such rules and principles should be applied in a case at bar.[5]

Finally, Mr. Lydiard's analysis is fundamentally flawed, even apart from his not considering the additional English legal authorities on one-forum preference and the business rationale for a single forum following the parties' "divorce." See generally Hofmeyr Decl. ¶¶ 13-22. Mr. Lydiard's statement (¶ 21) concedes that there is an exclusive English forum if a case involves exceptions (i) and (ii) in the Term Sheet's release but provides no rationale for a different result if a case involves exception (iii), as here. As a corollary, Mr. Lydiard's statement (¶ 29) makes the touchstone of his analysis whether English law applies, yet he does not explain why English law would not govern the definition of "fraud" in the release. And he implicitly interpolates the words "arising from the Term Sheet" at the end of section 29 even though he advises this Court (¶ 5(5), at 3) that contractual words are to be given their "'natural and ordinary meaning'" absent an intention that the parties could not reasonably have had, and even though he does not

---

expressly says that it is applicable to forum selection clauses generally, irrespective of the forums involved.

[5] Mr. Hofmeyr disputes Mr. Lydiard's conclusion and provides his reasoning to that end, both in order to assist this Court in its own evaluation and, out of an abundance of caution, in order not to permit any adverse inference if Mr. Lydiard's statement were to go unanswered.

go nearly so far as to say that the parties would have been irrational in adopting a single forum and a single body of substantive law going forward.

This Court should therefore enforce the parties' agreement and dismiss the case in favor of an English forum.

## II. THE COMPLAINT FAILS TO STATE A CLAIM.

If the Court were to proceed on the merits, it should dismiss this action for failure to state a claim. Section 8.1 of each Administration Agreement gives Cavell "the authority to delegate to any person such functions as it deems necessary for the performance of its obligations under this Agreement." See Complaint, Exhs. 1-2, ¶ 8.1. The thrust of Seaton's and Stonewall's complaint is that Cavell did delegate the claims function to NICO without telling them that it was doing so.

The suggestion that Cavell could not legally delegate the claims functions to NICO because that function was central to the duties that Cavell was contractually assuming founders both on the express language of section 8.1 and on the fact that the delegation did not relieve Cavell of exposure to damages if its delegee, NICO, did not perform. As Professor Corbin has noted, "An assignment is an expression of intention by the assignor that his duty shall pass to the assignee. . . . The performance required by a duty can often be delegated; but by such a delegation the duty itself is not escaped." Corbin on Contracts § 866, at 452 (West 1951). See also 3 Williston on Contracts § 411, at 18-19 (3d ed. 1960) ("[O]ne who owes money or is bound to any performance whatever, cannot by any act of his own, or by any act in agreement with any other person, except the [obligee], divest himself of the duty and substitute the duty of another"). To the same effect, see, e.g., Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 920 (2d Cir. 1977); Mandel v. Fischer, 205 A.D.2d 375, 613 N.Y.S.2d 381 (1st

Dep't 1994). (Apart from everything else, this rule renders any such misrepresentation or omission immaterial as a matter of law, materiality being an essential element of a fraud claim. See, e.g., Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 349-50, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999).)

What did relieve Cavell of exposure for NICO's alleged failure to perform appropriately as its delegee was the Term Sheet's general release in Cavell's favor. That release excepted only claims for fraud and contract claims for breaches of the Term Sheet itself. As the complaint does not purport to plead any breach of the Term Sheet, this Court therefore must find a well-pleaded fraud claim if this action is to survive. Thus, whether Seaton and Stonewall has pleaded an otherwise cognizable claim for breach of contract or even for breach of fiduciary duty, such as, for example, whether the delegation was "necessary" or whether NICO had a conflict of interest, both of which are argued in their brief, is quite beside the point.

It is difficult to discern exactly the basis of the fraud claim. The complaint does not remotely approach the requirements of Fed. R. Civ. P. 9(b), as the details of the allegedly fraudulent representations -- the statements, the speakers, and the times and places of the statements -- are nowhere set forth. See, e.g., Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006); Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000). No matter how it is viewed, there is no well-pleaded fraud claim here.

One thing that the complaint does not plead is that Cavell represented that it was itself handling the claims function without any delegation or that it had not delegated the claims function to NICO. Thus, insofar as the complaint focuses on the delegation of the claims function to NICO as the cause of Seaton's and Stonewall's

alleged injury, the unstated premise of the argument is that Cavell had a duty to inform Seaton and Stonewall of that delegation. Such a duty not only does not appear on the face of the agreements between them, but it is inconsistent with those agreements' allowing Cavell to delegate any function that it deemed necessary without any advance notice to Seaton or Stonewall. Cf. Complaint, Exhs. 1-2, ¶ 8.1 (requiring prior written consent for Cavell's assignment of obligations under Administration Agreements, except that Cavell "shall have the authority to delegate to any person such functions as it deems necessary for the performance of its obligations under the Agreement"). Furthermore, the notion that Seaton and Stonewall would never have countenanced NICO's involvement in claims administration or permitted prefunding is, as Cavell's and Mr. Randall's initial brief (at 3-4) showed without comment from Seaton and Stonewall, belied by the documentation to which their own complaint refers, their reinsurance agreements with NICO. As seen, those agreements, which antedated the Administration Agreements, had already given NICO the right to associate in claims administration and approve policy buybacks and commutations and required NICO to establish an account to pay claims as they fell due -- the very acts that Seaton and Stonewall now say underlay Cavell's and Mr. Randall's fraud. In addition, both had contracted away the right to appoint a third-party administrator in their reinsurance agreements with NICO before they had entered into the Administration Agreements with Cavell. Hoelsken Decl., exh. A, ¶¶ 4(H), 11(C); id. exh. B, ¶¶ 4(F), 11(D); id. exh. C, ¶¶ 5(H), 12(C).

Thus, the "fraud" as alleged appears at base to be that Cavell did that which it was contractually empowered to do without a notification that was not contractually required. Cavell is unaware of any case law in New York or in England

that would support Seaton's and Stonewall's position that such conduct can constitute a fraud, and Seaton and Stonewall cite no such authority. To the contrary, there could have been no justifiable reliance -- an element of the cause of action, e.g., First Nat'l State Bank v. Irving Trust Co., 91 A.D.2d 543, 457 N.Y.S.2d 17 (1st Dep't 1982), aff'd, 59 N.Y.2d 991, 992-93, 466 N.Y.S.2d 682, 453 N.E.2d 1099 (1983)-- as a matter of law under these circumstances. See, e.g., id. (reliance not justified if facts known to person said to have been deceived); Naturopathic Laboratories Int'l, Inc. v. SSL Americas, Inc., 18 A.D.3d 404, 405, 795 N.Y.S.2d 580 (1st Dep't 2005) (reliance on contention that contract was formed held unreasonable when draft of agreement provided for its execution and delivery as prerequisite to binding obligations).

Alternatively, the complaint appears to be alleging as a "fraud" that Cavell had told Seaton and Stonewall that it was going to do and, later, that it was doing a good job of administering their runoff when allegedly it was not. If that be their contention, it also does not constitute fraud because it is even more obviously nothing more than a claimed breach of contract. See, e.g., Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007) (must establish "a legal duty separate from the duty to perform under the contract" and a misrepresentation of present fact that is collateral to the contract itself); Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (to same effect); Ross v. DeLorenzo, 28 A.D.3d 631, 636, 813 N.Y.S.2d 756 (2d Dep't 2006) (mere allegation that defendant did not intend to perform insufficient to constitute fraud); McGovern v. T.J. Best Bldg. & Remodeling Inc., 245 A.D.2d 925, 666 N.Y.S.2d 854 (3d Dep't 1997) (misrepresentations must be more than promissory statements about what is to be done in the future). See also Complaint, Exhs.

1-2, § 2.1 ("shall perform the Services with reasonable care and skill in a professional and efficient manner").

The essence of the complaint is that Cavell breached its supposed but nonexistent promise to perform the claims administration function itself. Even putting aside the fact that there was no such promise, the putative obligation was one central to the contract. In addition, the complaint does not allege that any deficiencies in the runoff administration were hidden from or beyond Seaton's and Stonewall's purview. If this be the alleged fraud, they were fully capable of discovering -- and bound to discover -- it, such that no fraud claim lies. See, e.g., Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 321-22, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1958); Huron St. Realty Corp. v. Lorenzo, 19 A.D.3d 450, 452, 798 N.Y.S.2d 438 (2d Dep't 2005).

Thus, this Court need not look beyond the complaint and the operative agreements that that complaint cites and thereby incorporates by reference. If the Court does not dismiss for resolution in the English courts, it should dismiss the action on the complaint's face.

Dated:   New York, New York
         November 30, 2007

                                          Respectfully submitted,

                                          _____
                                          Vincent J. Vitkowsky
                                          Ira G. Greenberg
                                          EDWARDS ANGELL PALMER
                                             & DODGE LLP
                                          Attorneys for Defendants
                                          750 Lexington Avenue, 8th floor
                                          New York, NY  10022
                                          (212) 308-4411

## CERTIFICATE OF SERVICE

A hereby certify that on this 30th day of November 2007, I caused a copy of defendants' reply brief in further support of its motion to dismiss and accompanying documents to be sent by electronic mail and federal express to the following:

John F. Finnegan, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

Shawn L. Kelly, Esq.
Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962

_____
Vincent J. Vitkowsky