UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEATON INSURANCE COMPANY AND
STONEWALL INSURANCE COMPANY,

    Plaintiffs,

    versus

CAVELL USA INC. f/k/a KEN RANDALL
AMERICA, INC. f/k/a EASTGATE, INC. and
KEN RANDALL, individually,

    Defendants.

---

No. 1:07-CV-07032 (RMB) (KNF)

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Vincent J. Vitkowsky
Ira G. Greenberg
Robert W. DiUbaldo
EDWARDS ANGELL PALMER &
   DODGE LLP
Attorneys for Defendants
750 Lexington Avenue, 8th floor
New York, NY 10022
(212) 308-4411

287367

TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................... 1

I. THE ENGLISH COURTS SHOULD RESOLVE THIS DISPUTE. ................ 1

II. THE COMPLAINT FAILS TO STATE A CLAIM. ................................................ 6

TABLE OF AUTHORITIES

Page

**Cases**

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,
98 F.3d 13, 20 (2d Cir. 1996) ............................................................................ 7

Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918 (2d Cir. 1977) .......... 7

Danann Realty Corp. v. Harris,
5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1958) ............................... 9

First Nat'l State Bank v. Irving Trust Co.,
91 A.D.2d 543, 457 N.Y.S.2d 17 (1st Dep't 1982),
aff'd, 59 N.Y.2d 991, 466 N.Y.S.2d 682, 453 N.E.2d 1099 (1983) ................. 6

Gaidon v. Guardian Life Ins. Co. of Am.,
94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) ............................. 7

Huron St. Realty Corp. v. Lorenzo,
19 A.D.3d 450, 798 N.Y.S.2d 438 (2d Dep't 2005 ........................................... 9

Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d
1370 (1996) ........................................................................................................ 8

Light v. Taylor, 2007 WL 274798 (S.D.N.Y.) ............................................................ 2

Lombardozzi v. Debroux, 1992 WL 24687 (N.D.N.Y.) ............................................. 4

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ..................................... 2, 3

Mandel v. Fischer, 205 A.D.2d 375, 613 N.Y.S.2d 381 (1st Dep't 1994) ................. 7

McGovern, et al. v. T.J. Best Bldg. & Remodeling Inc.,
245 A.D.2d 925, 666 N.Y.S.2d 854 (3d Dep't 1997) ................................... 7, 9

Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171 (2d Cir. 2007) ............ 7

Naturopathic Laboratories Int'l, Inc. v. SSL Americas, Inc.,
18 A.D.3d 404, 795 N.Y.S.2d 580 (1st Dep't 2005) ..................................... 6, 9

Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007) .................................. 1, 2

Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher, et al., 299 A.D.2d 64, 747
N.Y.S.2d 441 (2d Dep't 2002) ........................................................................... 9

Tanzman et al. v. La Pietra, 8 A.D.3d 706, 778 N.Y.S.2d 199 (3rd Dep't 2004) ............... 9

**Other Authorities**

3 Williston on Contracts (3d ed. 1960) .................................................................... 6

Corbin on Contracts § 866, at 452 (West 1951) ...................................................... 6

287367

Plaintiffs Seaton Insurance Company and Stonewall Insurance Company cannot maintain this action against defendants Cavell USA Inc. and Kenneth Randall. First, Seaton and Stonewall agreed as part of the winding up of the parties' commercial relationships that any remaining claims between them would be brought in the English courts. This Court should dismiss on that ground alone. In addition, they try to evade the general release they gave as part of that winding up by relying on a carveout for fraud claims; but they cannot hide the fact that their claim is, at best, one for breach of contract and therefore within that release.[1]

## ARGUMENT

I. THE ENGLISH COURTS SHOULD RESOLVE THIS DISPUTE.

This Court should dismiss the action without reaching the merits pursuant to the forum selection clause in section 29 of the Term Sheet, exhibit 4 to the complaint. (Though so described, the Term Sheet is in fact a contract.). That clause provides, "The Term Sheet shall be governed by and construed in accordance with English law and the parties submit to the exclusive jurisdiction of the English Courts." Seaton and Stonewall do not contend that that clause is invalid or unenforceable. The only question is its ambit.

Earlier this year, the Court of Appeals for this Circuit in Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007), extensively addressed such clauses. Three holdings from Phillips are pertinent here. First, the issue is one of contract interpretation,

---

[1] This reply brief has been modified from the original version in light of the filing of a first amended complaint. As the law requires, Cavell and Mr. Randall are assuming the truth of the factual allegations of the amended complaint, even though they expect to prove their falsity if the action goes forward in any forum. More particularly, the claim that Seaton and Stonewall did not know of the prefunding of claims, the collaboration agreement, or NICO's involvement in their claims administration is demonstrably false. Though only the tip of the iceberg, Seaton and Stonewall have now conceded that they were fully aware of the supposed fraud when they executed the Term Sheet.

287367

with the initial focus on the language of the contract. Id. at 386, 389-90. Second, contracting parties are free to agree that their forum selection clause will govern claims that do not sound in contract.[2] Id. at 390; see id. at 388-89. And third, a court interpreting such a clause should "discount[] the precedential weight of cases that deal with dissimilarly worded clauses." Id. at 390 (citing John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1075 (3d Cir. 1997) (Alito, J.)).

Given the Court of Appeals' Phillips decision, much of Seaton's and Stonewall's discussion of case law in connection with this branch of Cavell's motion is immaterial. For example, not only does the holding of Light v. Taylor, 2007 WL 274798 (S.D.N.Y.), that a copyright claim cannot arise out of a contract directly conflict with the later decision in Phillips, 494 F.3d at 388, but the language in Light, 2007 WL 274798, at *6, is different from, and more restrictive than, that in section 29 of the Term Sheet.

Indeed, the operative language of the Term Sheet is as expansive as can be imagined, as the types of dispute that it covers are not limited by subject matter. The Supreme Court of the United States addressed a similar situation – and a similar clause – in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), a seminal opinion that pointed the federal judiciary toward the full enforcement of forum selection clauses. The clause in that case, involving an international towing contract, read, "Any dispute arising must be treated before the London Court of Justice." Id. at 2. When Zapata argued that the clause did not include in rem actions, the Court gave the argument the short shrift that

---

[2] Thus, Cavell's and Mr. Randall's statement that the clause provides an exclusive forum for disputes arising from the parties' "contractual relationships" in no way implies, as Seaton's and Stonewall's brief (at 15) incorrectly asserts, that Cavell and Mr. Randall "apparently recognize that the Term Sheet's forum selection clause is limited in scope and governs only contract claims."

it deserved. In words of direct significance here, the Supreme Court held, "[T]he language of the clause is clearly mandatory and all-encompassing." Id. at 20. The language here is no less "all-encompassing."

Even if the language were deemed limited to matters within the ambit of the Term Sheet itself, that ambit is broad enough to cover this dispute. The Term Sheet provides for the winding up of commercial relations between two groups of entities involved in the insurance business – Seaton and Stonewall and their parents and affiliates, on the one hand, and Cavell and its parents and affiliates, on the other. See Complaint, Exh. 4, Preamble. No matter how Seaton and Stonewall might characterize their claims, there can be no doubt that they arose from the parties' commercial relations. It would be completely reasonable to conclude that the parties wished to adopt a single body of law and designate a single forum to deal with any disputes among them going forward.

Moreover, the Term Sheet provides for a release in favor of Cavell and Mr. Randall, from which are excepted "fraud" claims. Id. ¶ 13. Any such fraud claim, such as the one purportedly made in this case, will necessarily involve the construction of the term "fraud" in the release's exception. Nor is this necessity purely theoretical: As the declaration of Stephen Hofmeyr, Q.C., an English barrister, notes, English law does not generally regard failures to disclose in a business context as fraud; yet the complaint rests heavily upon just such alleged failures. Hofmeyr Decl. ¶ 24 (and cases cited).[3]

Seaton's and Stonewall's brief (at 14) effectively concedes Cavell's and Mr. Randall's conclusion. In discussing Lombardozzi v. Debroux, 1992 WL 24687

---

[3] Mr. Hofmeyr's declaration was previously provided to the Court with defendants' original reply brief. All cases cited in Mr. Hofmeyr's declaration were also previously provided for the Court's convenience as exhibits to the declaration of Ira G. Greenberg.

(N.D.N.Y.), they describe as "a common sense test for determining whether a claim is subject to a contract's forum selection clause": "[I]f a claim required an analysis of the cont[r]act containing the forum selection clause, the claim was subject to the clause."

Nor does the unsworn statement of Andrew Lydiard, QC, another English barrister, submitted on behalf of Seaton and Stonewall alter the analysis one whit.

First, insofar as Mr. Lydiard recites the general rules of contract construction applicable in England, the parties have no disagreement. Notably, however, Mr. Lydiard cites no English cases that address forum selection clauses in general, let alone that are remotely on all fours with the case before this Court. Indeed, to the extent that Seaton and Stonewall (Brief at 12 n.3) are correct in asserting that "there is no genuine conflict between US and UK law as respects the application of the Term Sheet's forum selection clause," Mr. Lydiard's statement becomes irrelevant.

Second, Mr. Lydiard's exposition of English law is incomplete, and the cited position in Seaton's and Stonewall's brief is not fully correct. As Mr. Hofmeyr's declaration (¶¶ 8-12) demonstrates with reference to the months-old Premium Nafta decision of the House of Lords, England's highest court, English law erects a strong presumption in favor of a single forum to adjudicate disputes; "[a]ny jurisdiction clause should therefore be construed in accordance with this presumption unless the language makes it clear that certain questions were intended to be excluded."[4] Id. ¶ 8.

Third, insofar as Mr. Lydiard purports to construe the contract provision in question, he is usurping this Court's role. See Hofmeyr Decl. ¶ 23 (and case cited).

---

[4] Although Premium Nafta itself deals with arbitration, its rule of law does not rest on that fact. To the contrary, as Mr. Hofmeyr's declaration (¶¶ 10-12) notes, the House of Lords expressly says that it is applicable to forum selection clauses generally, irrespective of the forums involved.

Nothing makes him any more expert in doing so than would any common law attorney or judge with knowledge of the relevant legal principles. As Mr. Hofmeyr's declaration (id.) points out, an English judge seeking guidance on United States law would receive expert opinion about our country's legal rules and principles but would not entertain expert advice on how such rules and principles should be applied in a case at bar.[5]

Finally, Mr. Lydiard's analysis is fundamentally flawed, even apart from his not considering the additional English legal authorities on one-forum preference and the business rationale for a single forum following the parties' "divorce." See generally Hofmeyr Decl. ¶¶ 13-22. Mr. Lydiard's statement (¶ 21) concedes that there is an exclusive English forum if a case involves exceptions (i) and (ii) in the Term Sheet's release but provides no rationale for a different result if a case involves exception (iii), as here. As a corollary, Mr. Lydiard's statement (¶ 29) makes the touchstone of his analysis whether English law applies, yet he does not explain why English law would not govern the definition of "fraud" in the release. And he implicitly interpolates the words "arising from the Term Sheet" at the end of section 29 even though he advises this Court (¶ 5(5), at 3) that contractual words are to be given their "'natural and ordinary meaning'" absent an intention that the parties could not reasonably have had, and even though he does not go nearly so far as to say that the parties would have been irrational in adopting a single forum and a single body of substantive law going forward.

This Court should therefore enforce the parties' agreement and dismiss the case in favor of an English forum.

---

[5] Mr. Hofmeyr disputes Mr. Lydiard's conclusion and provides his reasoning to that end, both in order to assist this Court in its own evaluation and, out of an abundance of caution, in order not to permit any adverse inference if Mr. Lydiard's statement were to go unanswered.

## II.  THE COMPLAINT FAILS TO STATE A CLAIM.

If the Court were to keep the case, it should dismiss this action for failure to state a claim. Seaton and Stonewall attempt to amend their complaint to create a claim when none exists. They appear to advance several theories.

As with their original complaint, the first thrust of the amended complaint is that Cavell delegated the claims function to NICO without telling them that it was doing so. However, section 8.1 of each Administration Agreement gives Cavell "the authority to delegate to any person such functions as it deems necessary for the performance of its obligations under this Agreement" and, while requiring prior written consent for Cavell's assignment of obligations under these agreements, imposes no such requirement in this respect. See Complaint, Exhs. 1-2, ¶ 8.1. There could not have been reasonable reliance -- an element of a fraud cause of action, e.g., First Nat'l State Bank v. Irving Trust Co., 91 A.D.2d 543, 457 N.Y.S.2d 17 (1st Dep't 1982), aff'd, 59 N.Y.2d 991, 992-93, 466 N.Y.S.2d 682, 453 N.E.2d 1099 (1983) -- as a matter of law under these circumstances. See, e.g., id. (reliance not justified if facts known to person said to have been deceived); Naturopathic Laboratories Int'l, Inc. v. SSL Americas, Inc., 18 A.D.3d 404, 405, 795 N.Y.S.2d 580, 581 (1st Dep't 2005) (reliance on contention that contract was formed held unreasonable when draft of agreement provided for its execution and delivery as prerequisite to binding obligations).

In addition, the assumption underlying this argument that Cavell could thereby avoid its duty or escape liability if its delegee, NICO, did not perform is wrong. As Professor Corbin has noted, "The performance required by a duty can often be delegated; but by such a delegation the duty itself is not escaped." Corbin on Contracts § 866, at 452 (West 1951); accord, 3 Williston on Contracts § 411, at 18-19 (3d ed. 1960);

Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 920 (2d Cir. 1977); Mandel v. Fischer, 205 A.D.2d 375, 613 N.Y.S.2d 381 (1st Dep't 1994). Because Cavell remained "on the hook," any such misrepresentation or omission was immaterial as a matter of law, materiality being an essential element of a fraud claim. See, e.g., Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 349-50, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999).

What did relieve Cavell of exposure for NICO's alleged failure to perform appropriately as its delegee was the Term Sheet's general release in Cavell's favor. That release excepted only claims for fraud and contract claims for breaches of the Term Sheet itself, of which there were none. Thus, whether Cavell breached its contracts or even its fiduciary duty is quite beside the point. Falling within this rubric are the allegations of the amended complaint (e.g., ¶ 11) that Cavell had told Seaton and Stonewall that it was going to do and, later, that it was doing a good job of administering their runoff when allegedly it was not. The prospective statement is merely promissory, and the alleged falsity of the current statement is nothing more than evidence of a claimed breach of contract. See, e.g., Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007) (must establish "a legal duty separate from the duty to perform under the contract" and a misrepresentation of present fact that is collateral to the contract itself); Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (to same effect); McGovern, et al. v. T.J. Best Bldg. & Remodeling Inc., 245 A.D.2d 925, 927, 666 N.Y.S.2d 854, 856-57 (3d Dep't 1997) (misrepresentations must be more than promissory statements about what is to be done in the future). See also Complaint, Exhs. 1-2, § 2.1 ("shall perform the Services with reasonable care and skill in a professional and

efficient manner"). Similarly within this rubric is the allegation (e.g., ¶ 23) that the agreements required Cavell to manage claims "with the objective of their settlement at the lowest cost of indemnity in the shortest timeframe." (In fact, there is no such provision in the applicable agreements, as the Court may confirm by reviewing them.)

The principal new effort that the amended complaint makes to plead something that looks like fraud is its averments that Cavell had represented that it was itself going to be handling the claims function without any delegation or that it had not delegated the claims function to NICO (e.g., ¶¶ 11, 15).[6] Even apart from the impossibility of finding reasonable reliance given that the power to delegate is expressly granted to Cavell in the administration agreements, there are three insuperable problems with Seaton's and Stonewall's new contention.

First, the alleged misrepresentations were made not to Seaton or Stonewall, but rather to two officials of Greenwich Street Capital, LLC, which is a stranger to this action. As such, neither Seaton nor Stonewall may sue on them. See, e.g., Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80, 668 N.E.2d 1370, 1373 (1996) (misrepresentation must be made for purpose of inducing other party to rely on it); Tanzman et al. v. La Pietra, 8 A.D.3d 706, 707, 778 N.Y.S.2d

---

[6] The assertion that Seaton and Stonewall would never have countenanced NICO's involvement in claims administration or permitted prefunding is, as Cavell's and Mr. Randall's initial brief (at 3-4) showed without comment from Seaton and Stonewall, belied by the documentation to which their own complaint refers, their reinsurance agreements with NICO. As seen, those agreements, which predated the administration agreements, had already given NICO the right to associate in claims administration and approve policy buybacks and commutations -- some of the acts that Seaton and Stonewall now say underlay Cavell's and Mr. Randall's fraud. In addition, both had contracted away the right to appoint a third-party administrator in their reinsurance agreements with NICO before they entered into the Administration Agreements with Cavell. Hoelsken Decl., exh. A, ¶¶ 4(H), 11(C); id. exh. B, ¶¶ 4(F), 11(D); id. exh. C, ¶¶ 5(H), 12(C).

199, 200 (3rd Dep't 2004) (to the same effect); Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher, et al., 299 A.D.2d 64, 70, 747 N.Y.S.2d 441, 446 (2d Dep't 2002) (a cognizable fraud claim requires a knowing misrepresentation of a material fact which is false and intended to deceive a party to induce them to act upon it, causing injury). (For the same reason, Seaton's and Stonewall's new assertion (¶ 57) that Cavell had misled insurance regulators, even if it were true, would not help them to sustain the amended complaint.)

Second, the alleged misrepresentations were not representations of fact, but rather were either predictions, see, e.g., Naturopathic Laboratories Int'l, Inc., 18 A.D.3d at 404, 795 N.Y.S.2d at 581, or promises, neither of which is actionable. See also McGovern, et al., 245 A.D.2d at 927, 666 N.Y.S.2d at 856-57 (to the same effect).

And third, the complaint does not allege that any deficiencies in the runoff administration were hidden from or beyond Seaton's and Stonewall's purview. If this be the alleged fraud, they were fully capable of discovering -- and bound to discover -- it, such that no fraud claim lies. See, e.g., Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 321-22, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1958); Huron St. Realty Corp. v. Lorenzo, 19 A.D.3d 450, 452, 798 N.Y.S.2d 438 (2d Dep't 2005).

Thus, this Court need not look beyond the complaint and the operative agreements that that complaint cites and thereby incorporates by reference. If the Court does not dismiss for resolution in the English courts, it should dismiss the action on the complaint's face.

Dated:   New York, New York
        January 4, 2008

                                      Respectfully submitted,

                                      */s/ Vincent J. Vitkowsky*

                                      Vincent J. Vitkowsky
                                      Ira G. Greenberg
                                      Robert W. DiUbaldo
                                      EDWARDS ANGELL PALMER
                                         & DODGE LLP
                                      Attorneys for Defendants
                                      750 Lexington Avenue, 8th floor
                                      New York, NY  10022
                                      (212) 308-4411

287367

## CERTIFICATE OF SERVICE

A hereby certify that on this 4th day of January 2008, I caused a copy of defendants' reply brief in further support of its motion to dismiss and accompanying documents to be sent by electronic mail and federal express to the following:

|  |  |
|---|---|
| John F. Finnegan, Esq. | Shawn L. Kelly, Esq. |
| Cadwalader Wickersham & Taft LLP | Riker, Danzig, Scherer, Hyland & Perretti LLP |
| One World Financial Center | Headquarters Plaza |
| New York, NY 10281 | One Speedwell Avenue |
|  | Morristown, New Jersey 07962 |

_____
Robert W. DiUbaldo