**EXHIBIT 4**

## Term Sheet

This Term Sheet documents the agreement between the parties identified as Parties below with respect to the orderly termination of the contractual and other commercial relationships amongst them and the orderly handover by Cavell Management Services Limited ("Cavell UK") and Cavell USA Inc. ("Cavell USA") of run-off management and other services in connection with Seaton Insurance Company ("Seaton"), Stonewall Insurance Company ("Stonewall"), Unione Italiana (UK) Reinsurance Company Limited ("Unione") and Cavell Insurance Company Limited ("CIC") having regard to the regulatory responsibilities of Dukes Place (as defined below) and Randall (as defined below) and the interests of the policyholders of Seaton, Stonewall, Unione and CIC.

### Parties

(1)    Dukes Place Holdings LP for itself and on behalf of its partners, shareholders, directors, officers, subsidiaries, associated companies and affiliates (including but without limiting the generality of the foregoing Seaton, Stonewall, Unione and CIC) ("Dukes Place");

(2)    Randall & Quilter Investment Holdings Limited (for itself and on behalf of its partners, shareholders, directors, officers, subsidiaries, associated companies and affiliates (including but without limiting the generality of the foregoing Cavell USA and Cavell UK) ("Randall"); and

(3)    For the purpose of Clause 20 only, The SLP Partnership, a UK partnership between Ken Randall, Alan Quilter, Robert Barclay, Mark Shepherd and Charles Singh (together the "Individual Partners") formed by the Special Limited Partner Agreement dated 31 October 2000 as amended on 19 December 2000 to enable the Individual Partners to participate as a Special Limited Partner in Dukes Place Holdings LP.

### Agreed terms

In consideration of the mutual covenants and undertakings set out below, it is agreed as follows:

1.    The current management contract between Cavell UK and CIC ("the CIC Management Agreement") terminates on 31st December 2006. Management fees to 31st March 2006 have already been paid. CIC will pay Cavell UK £975,000 in respect of management fees from 1st April to 31st December 2006 on a quarterly basis in advance.

Confidential
DP002575

2.  Cavell UK shall continue to provide services in connection with CIC's Scheme of Arrangement, for the duration of the CIC Management Agreement. Cavell UK's fees for such services will continue to be paid on a time basis, following the submission of time-sheets. Cavell UK will also continue to be entitled to its reasonable expenses in carrying out such services.

3.  The CIC Management Agreement may be extended by mutual agreement between CIC and Cavell UK. In the event that no such extended agreement is concluded, Cavell UK shall use its best endeavours to ensure that no member of its staff will claim to be transferred to Dukes Place, CIC or any replacement service provider under the Transfer of Undertakings (Protection of Employees) Regulations 1981 (as amended) ("TUPE"). Cavell UK will indemnify Dukes Place, CIC or any replacement service provider against all liabilities, expenses, damages and costs (including legal costs) suffered or incurred in respect of any claim made by any employees (or ex-employees) of Cavell UK against Dukes Place, CIC or any replacement service provider pursuant to TUPE (including any claims under Regulation 10, and any related claims). Such indemnity, which shall be partially secured as set out in Clause 11 below, shall include the full costs of termination of employment of any such employees should they be deemed to be transferred under TUPE by operation of law.

4.  In the event that Cavell UK and CIC agree to extend the CIC Management Agreement after 31st December 2006, Cavell UK's fee will be a core sum of £250,000 per annum plus a further sum calculated as £1,000,000 multiplied by a fraction, the numerator of which is the amount of the CIC net reserves at 31 December 2006 and the denominator of which is the amount of the CIC net reserves at 31 December 2005 provided that in no event shall Cavell UK's fee exceed £1.3 million in aggregate.

5.  Cavell UK will accept an additional layer of management oversight, as required by Dukes Place, into the affairs of CIC since its acquisition by Dukes Place. Such controls and procedures, which must be reasonable and proportionate, will be implemented and audited by Castlewood (EU) Limited or Pricewaterhouse Coopers except that if either organisation is unable to undertake the role or refuses then it will be such other professional firm as may be agreed by Cavell UK and CIC. Cavell UK agrees to fully cooperate with the implementation of whatever controls and procedures Dukes Place, acting reasonably, deems to be appropriate. Dukes Place shall

hold Cavell UK harmless against any claim or liability arising as a result of Cavell UK complying with such controls or procedures, but only to the extent that any such claim or liability would not otherwise have arisen but for Cavell UK complying with such controls or procedures.

6.  The current management contract between Cavell UK and Unione ("the Unione Management Agreement") terminates on 30th June 2006. Management fees to 31st March 2006 have already been paid. Unione will pay Cavell UK an additional quarter's management fee on April 1, 2006 of £175,000.

7.  Cavell UK shall continue to provide services in connection with Unione's Scheme of Arrangement, for the duration of the Unione Management Agreement. Cavell UK's fees for such services will continue to be paid on a time basis, following the submission of time-sheets. Cavell UK will also continue to be entitled to its reasonable expenses in carrying out such services. Cavell UK will be not be entitled to any contingency fees, as set out in the Unione Management Agreement, up to 30th June 2006. No other fees or expenses will be paid to Cavell UK in relation to services provided to Unione other than as provided in clauses 6, 7 and, if appropriate, 9 of this Term Sheet.

8.  The Unione Management Agreement may be extended by mutual agreement between Unione and Cavell UK. In the event that no such extended agreement is concluded, Cavell UK shall use its best endeavours to ensure that no member of its staff will claim to be transferred to Dukes Place, Unione or any replacement service provider under the Transfer of Undertakings (Protection of Employees) Regulations 1981 (as amended) ("TUPE"). Cavell UK will indemnify Dukes Place, Unione or any replacement service provider against all liabilities, expenses, damages and costs (including legal costs) suffered or incurred in respect of any claim made by any employees (or ex-employees) of Cavell UK against Dukes Place, Unione or any replacement service provider pursuant to TUPE (including any claims under Regulation 10, and any related claims). Such indemnity, which shall be partially secured as set out in Clause 11 below, shall include the full costs of termination of employment of any such employees should they be deemed to be transferred under TUPE by operation of law.

9.  In the event that Cavell UK and Unione agree to extend the Unione Management Agreement after 30th June 2006, Cavell UK's fee will be at the rate of £350,000 per annum.

Confidential
DP002577

10. Cavell UK will accept an additional layer of management oversight, as required by Dukes Place, into the affairs of Unione since its acquisition by Dukes Place. Such controls and procedures, which must be reasonable and proportionate, will be implemented and audited by Castlewood (EU) Limited or Pricewaterhouse Coopers except that if either organisation is unable to undertake the role or refuses then it will be such other professional firm as may be agreed by Cavell UK and CIC. Cavell UK agrees to fully cooperate with the implementation of whatever controls and procedures Dukes Place, acting reasonably, deems to be appropriate. Dukes Place shall hold Cavell UK harmless against any claim or liability arising as a result of Cavell UK complying with such controls or procedures, but only to the extent that any such claim or liability would not otherwise have arisen but for Cavell UK complying with such controls or procedures.

11. The indemnities referred to in Clauses 3 and 8 shall be partially secured by an escrow account funded by Cavell UK in the amount of £250,000 for this purpose and maintained by Clyde & Co. Interest accrued on the escrow account shall form part of the security. The escrow account shall be closed upon the earlier of (i) Clyde & Co, acting reasonably and at the request of Cavell UK, concluding that there is no prospect of there being any further liability in respect of which the escrow account is required as security and (ii) exhaustion of the escrow account. On closure, Cavell UK will receive the balance held in the escrow account including accrued interest at the date of closure.

12. The existing run-off management agreements between Cavell USA and Seaton and Cavell USA and Stonewall shall terminate on 31st March 2006 by mutual consent and without cause.

13. Dukes Place hereby releases and forever discharges Randall of and from all actions, causes of action, suits, claims and demands whatsoever, whether at law or equity, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, fixed or contingent, accrued or unaccrued, asserted or unasserted, which Dukes Place ever had, now has or hereafter can, shall or may have against Randall for, upon, or by reason of any matter, cause or thing whatsoever arising out of or in connection with any business, commercial, contractual or other arrangements between or involving either of them as at the date of this Term Sheet, save (i) in respect of any obligations expressly set out in this Term Sheet, (ii) in respect of any actions, causes of action, suits, claims, and demands arising

Confidential
DP002578

DP002578

from any breach by Randall of any provision of this Term Sheet, and (iii) in the case of fraud on the part of Randall. This release will not inure to the benefit of any third party, and Dukes Place expressly reserves the right to pursue, against any such third party, any of the claims released herein.

14. Cavell USA's arbitration proceedings against Seaton and Stonewall will forthwith be dismissed and the arbitration demands withdrawn, with each side bearing its own costs.

15. Cavell USA has been paid its fees up to 31ˢᵗ March 2006. Cavell USA will cooperate in an orderly transition of the management of Seaton and Stonewall to Seaton and Stonewall or their respective designated representatives for no further charge. For the purpose of this Clause 15, Seaton and Stonewall hereby designate Castlewood US Inc as their designated representatives. Cavell USA will operate to a timetable for the transition set by Dukes Place. Such transition will start from the date of this Term Sheet and will cover the transfer of all books and records of Stonewall and Seaton, including documents in hard-copy as well as all electronic information, together with such software and computer systems as are owned by Seaton and Stonewall respectively. All such documentation and information will be in business usable form.

16. Notwithstanding the termination of the run-off management agreements, Cavell USA will provide, for no further charge, such assistance as may reasonably be required by Seaton and Stonewall until 30ᵗʰ June 2006, including, but not limited to, assistance in connection with (i) the preparation of Seaton and Stonewall's respective statutory accounts and regulatory returns as at 31 December 2005 and 31 March 2006, (ii) the management of the reinsurance programs, and (iii) any IT issues arising from the transition.

17. Cavell USA's obligation to fully cooperate with the timely transfer of records and responsibilities to Seaton and Stonewall or their respective designated representatives under the direction of Dukes Place will be partially secured by an escrow account in the amount of $250,000 funded by Cavell USA for this purpose and maintained by Clyde & Co. Castlewood US Inc., acting reasonably, will be sole judge of whether these obligations are met. The escrow account shall be released no later than 31st March 2007.

18. Dukes Place will forthwith upon execution of this Term Sheet pay Cavell USA's outstanding bill of US$28,167.25, which was invoiced

Confidential
DP002579

on 16th January 2006, in respect of due diligence fees relating to the sale of Seaton and Stonewall.

19. Dukes Place will forthwith upon execution of this Term Sheet surrender its interests in Cavell UK and Cavell USA for no consideration.

20. Randall, Dukes Place and the SLP Partnership agree that the Amended and Restated Agreement of Limited Partnership of Dukes Place Holdings, L.P dated November 2, 2000 (the "DP LP Agreement") shall be amended so as to substitute the following language in place of the existing language of section 5.3(b) of the DP LP Agreement:

"Notwithstanding anything in section 5.3(a) to the contrary, 60% of each Override Distribution shall not be distributed to the Special Limited Partner until such time as the aggregate amount available to it for Override Distribution exceeds US$4,583,334 and such amounts not distributed to the Special Limited Partner will be distributed to the Existing Partners. For the avoidance of doubt, the Special Limited Partner shall receive 100% of each dollar over US$4,583,334 available to it for Override Distribution pursuant to the terms of Section 5.3(a)."

21. Randall directors and employees will immediately resign from the boards of all Dukes Place companies/subsidiaries/associated companies/affiliates, save that, in the case of Seaton, Stonewall, Cirrus Reinsurance Company, CIC and Unione, Robert Barclay shall continue to serve as a director on behalf of Dukes Place.

22. Except as expressly set out in this Term Sheet, all other contractual relationships between Dukes Place and Randall will be terminated without compensation.

23. Dukes Place has already provided a notice of termination effective 31st December 2006 to Renaissance Capital Partners ("RCP") under the terms of its Advisory Agreement. RCP will continue to advise Dukes Place as per the Advisory Agreement until that time. Dukes Place will not purchase the 51% of RCP owned by Randall.

24. Cavell UK's lease of premises at Rose Lane Business Centre in Norwich will continue as set out therein including, without limiting the generality of the foregoing, on a rent-free basis until January 2008.

Confidential
DP002580

DP002580

25. The parties intend that this Term Sheet shall be legally binding from the date on which the last of them shall have executed this Term Sheet.

26. No person, other than Castlewood US Inc or Castlewood (EU) Limited, who is not a party to this Term Sheet may enforce any provision of this Term Sheet under the Contracts (Rights of Third Parties) Act 1999.

27. Each of the parties shall do all such things and execute all such documents as shall reasonably be required by any other party to implement the terms contained herein. In particular, but without limiting the generality of the foregoing, each of Dukes Place and Randall shall procure that their respective partners, shareholders, directors, officers, subsidiaries, associated companies and affiliates carry out such actions as are allocated to them in this Term Sheet.

28. Each of the parties shall keep this Term Sheet, including its existence and terms, confidential and shall not without the prior written consent of the other parties disclose it to any other person other than:

    (a) as required by law;
    (b) to any government or regulatory agency having jurisdiction;
    (c) to its professional advisers or insurers having a need to know the same; or
    (d) as required by any internal auditing, tax, compliance or banking requirements.

29. This Term Sheet shall be governed by and construed in accordance with English law and the parties submit to the exclusive jurisdiction of the English Courts.

_____
For Dukes Place Holdings LP
Dated: 12 February 2006

_____
For Randall & Quilter Investments Holdings Limited
Dated:

Confidential
DP002581

25. The parties intend that this Term Sheet shall be legally binding from the date on which the last of them shall have executed this Term Sheet.

26. No person, other than Castlewood US Inc or Castlewood (EU) Limited, who is not a party to this Term Sheet may enforce any provision of this Term Sheet under the Contracts (Rights of Third Parties) Act 1999.

27. Each of the parties shall do all such things and execute all such documents as shall reasonably be required by any other party to implement the terms contained herein. In particular, but without limiting the generality of the foregoing, each of Dukes Place and Randall shall procure that their respective partners, shareholders, directors, officers, subsidiaries, associated companies and affiliates carry out such actions as are allocated to them in this Term Sheet.

28. Each of the parties shall keep this Term Sheet, including its existence and terms, confidential and shall not without the prior written consent of the other parties disclose it to any other person other than:

    (a) as required by law;
    (b) to any government or regulatory agency having jurisdiction;
    (c) to its professional advisers or insurers having a need to know the same; or
    (d) as required by any internal auditing, tax, compliance or banking requirements.

29. This Term Sheet shall be governed by and construed in accordance with English law and the parties submit to the exclusive jurisdiction of the English Courts.


For Dukes Place Holdings LP
Dated:



For Randall & Quilter Investments Holdings Limited
Dated: 17th February 2006

Confidential
DP002582

DP002582

For SLP Partnership
Dated: 20 February 2006

Confidential
DP002583

DP002583