UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SEATON INSURANCE COMPANY and STONEWALL
INSURANCE COMPANY,

                                        Plaintiffs,

                -against-

CAVELL USA INC. f/k/a KEN RANDALL AMERICA, INC.
f/k/a EASTGATE, INC. and KEN RANDALL, individually,

                                        Defendants.

Case No.: 07cv7032(RMB)
(KNF)

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO ENJOIN DEFENDANTS FROM
## PROSECUTING THE SAME CLAIMS IN A FOREIGN ACTION

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
(212) 504-6000

RIKER, DANZIG, SCHERER, HYLAND &
PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 538-0800

Attorneys for Plaintiffs, Seaton Insurance Company
and Stonewall Insurance Company

Dated:      March 4, 2008

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

      A.    The Parties ................................................................................................. 2

      B.    Defendants Fraudulently Induce Seaton and Stonewall to Enter into the Administration Agreements ........................................................ 3

      C.    Procedural History of this Action .......................................................... 4

      D.    The UK Action ......................................................................................... 5

ARGUMENT ........................................................................................................................ 8

DEFENDANTS SHOULD BE ENJOINED FROM PROSECUTING THE UK ACTION .......... 8

      A.    The Parties And The Issues To Be Resolved In The Two Actions Are The Same ........................................................................................... 8

      B.    The Purported Dispute Concerning Subpoenas Issued in Another Proceeding Is Irrelevant to Plaintiffs' Motion ....................................... 10

      C.    All Of The Discretionary Factors Demonstrate That Cavell And Randall Should Be Enjoined From Proceeding With The UK Action ...................................................................................................... 11

            1.    The UK Action Constitutes a Threat to This Court's Validly Invoked Jurisdiction ................................................. 12

            2.    The Remaining Discretionary Factors Also Support The Issuance of An Injunction Here ................................................. 14

CONCLUSION .................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### <u>CASES:</u>

<u>American Home Assur. Co. v. Insurance Corp. of Ir. Ltd.</u>,
603 F. Supp. 636 (S.D.N.Y. 1984) ...............................................................................12, 13

<u>China Trade & Dev. Corp. v. M.V. Choong Yong</u>,
837 F.2d 33 (2d Cir. 1987)........................................................................................<u>passim</u>

<u>Estee Lauder Cos. v. Batra</u>,
430 F. Supp. 2d 158 (S.D.N.Y. 2006) ................................................................................ 15

<u>Ibeto Petrochem. Indus. Ltd. v. M/T Beffen</u>,
475 F.3d 56 (2d Cir. 2007)................................................................................................. 16

<u>Karaha Bodas Co., LLC v. Perushaan Pertambangan Minyak Dan Gas Bumi Negara</u>,
500 F.3d 111 (2d Cir. 2007)....................................................................................<u>passim</u>

<u>L'Europeenne de Banque v. La Republica de Venez.</u>,
700 F. Supp. 114 (S.D.N.Y. 1988) .................................................................................... 15

<u>Laker Airways Ltd. v. Sabena, Belgian World Airlines</u>,
731 F.2d 909 (D.C. Cir. 1984) ................................................................................<u>passim</u>

<u>Marine Midland Bank, N.A. v. United Mo. Bank, N.A.</u>,
643 N.Y.S.2d 528 (1st Dep't), <u>lv. to appeal dismissed</u>,
672 N.E.2d 609 (N.Y. 1996) ............................................................................................. 15

<u>Motorola Credit Corp. v. Uzan</u>,
No. 02 Civ. 666, 2003 WL 56998 (S.D.N.Y. Jan. 7, 2003).................................................. 11

<u>Mutual Serv. Cas. Ins. Co. v. Frit Indus., Inc.</u>,
805 F. Supp. 919 (M.D. Ala. 1992), <u>aff'd</u>,
3 F.3d 442 (11th Cir. 1993)............................................................................................... 13

<u>Nagoya Venture Ltd. v. Bacopulos</u>,
No. 96 Civ. 9317, 1998 WL 307079 (S.D.N.Y. June 11, 1998) ...............................10, 14, 17

<u>New York by Lefkowitz v. Colorado St. Christian Coll. of Church of Inner Power, Inc.</u>,
346 N.Y.S.2d 482 (Sup. Ct. Kings Co. 1973)...................................................................... 16

<u>Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.</u>,
369 F.3d 645 (2d Cir. 2004)....................................................................................<u>passim</u>

**PAGE(S)**

Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,
    895 F. Supp. 660 (S.D.N.Y. 1995), aff'd,
    109 F.3d 850 (2d Cir. 1997) ................................................................................. 15

Purity Sup., Inc. v. Attorney Gen.,
    407 N.E.2d 297 (Mass. 1980) ............................................................................... 16

Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,
    361 F.3d 11 (1st Cir. 2004) .......................................................................... passim

SG Avipro Fin. Ltd. v. Cameroon Airlines,
    No. 05 Civ. 655, 2005 WL 1353955 (S.D.N.Y. June 8, 2005) ............................... 8

Suchodolski Assocs. v. Cardell Fin. Corp.,
    Nos. 03 Civ. 4148, 5732, 2006 WL 3327625 (S.D.N.Y. Nov. 16, 2006) ......................... 8, 11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

SEATON INSURANCE COMPANY and STONEWALL
INSURANCE COMPANY,

Plaintiffs,

-against-

CAVELL USA INC. f/k/a KEN RANDALL AMERICA, INC.
f/k/a EASTGATE, INC. and KEN RANDALL, individually,

Defendants.

Case No.: 07cv7032(RMB)
(KNF)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO ENJOIN DEFENDANTS FROM
## PROSECUTING THE SAME CLAIMS IN A FOREIGN ACTION

      Plaintiffs Seaton Insurance Company ("Seaton") and Stonewall Insurance Company ("Stonewall") (collectively, "Plaintiffs" or the "Companies") submit this Memorandum of Law in support of their motion to enjoin the defendants from prosecuting the same claims in a foreign proceeding.

## PRELIMINARY STATEMENT

      On August 6, 2007, Plaintiffs commenced the instant action (the "NY Action") against defendants Cavell USA Inc. f/k/a Ken Randall America, Inc. f/k/a Eastgate, Inc. ("Cavell") and Ken Randall ("Randall") (collectively, "Defendants"). The NY Action seeks, inter alia, to recover millions of dollars in management fees paid pursuant to two agreements entered into by Plaintiffs and Cavell (the "Administration Agreements"), which Plaintiffs contend were entered only as a result of Defendants' fraud.

Months later, Defendants decided that they would prefer to litigate this dispute in the United Kingdom and commenced an action there (the "UK Action"). That action, which is still in its preliminary stages, seeks resolution of the very issues before this Court. Indeed, Defendants attached the Complaint in this action to their initial filing in the UK Action, and effectively asked the UK court to disregard any rulings made by this Court concerning the parties' disputes. Thus, not only are Defendants engaged in blatant forum shopping, but they seek to deprive this Court from exercising its properly invoked jurisdiction and to deprive Plaintiffs – who are residents of the United States – from litigating their dispute in a U.S. Court.[1]

Plaintiffs therefore respectfully ask this Court to preserve its rightful jurisdiction over the parties' dispute and to protect Plaintiffs' access to the U.S. courts by issuing an order enjoining the Defendants from prosecuting the UK Action. As discussed below, the Court has the discretion to enter into such an order, since the parties and issues to be decided are the same. See Points A and B. Moreover, consideration of all of the relevant factors demonstrates that an anti-suit injunction is warranted here. See Point C.

## FACTUAL BACKGROUND[2]

### A.    The Parties

Plaintiffs Seaton and Stonewall are U.S. insurance companies that are organized under the laws of the State of Rhode Island, with their principal place of business in Warwick, Rhode Island. Seaton and Stonewall are no longer underwriting new insurance business, but are

---

[1]    Earlier today, the UK court issued an Order, staying the UK Action until after this Court issues its decision on the pending motion to dismiss, thereby indicating a preference to recognize this Court's determinations on the issues raised by the motion – namely, jurisdiction and whether Plaintiffs have adequately alleged a claim sounding in fraud. See Ex. H.

[2]    The facts set forth herein are based on the allegations in the Amended Complaint (the "Am. Compl."), a copy of which (without exhibits) is attached to the Declaration of Elizabeth Butler (the "Butler Decl.") as Ex. A. References to Exhibits herein are references to the exhibits annexed to the Butler Decl.

rather in the process of winding down their business, which includes "running off" their existing obligations under previously issued insurance and reinsurance policies. See Am. Compl. ¶¶ 5, 6, 16-21, 30-36.

Defendant Cavell, formerly known as Ken Randall America, Inc. and, earlier still, as Eastgate, Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Cambridge, Massachusetts. Am. Compl. ¶ 7.

Defendant Ken Randall ("Randall") is a natural person who is a citizen of the United Kingdom. At all relevant times, Randall was the Chairman of the Board of Directors of Cavell. Am. Compl. ¶¶ 7, 8, 11.

Non-party National Indemnity Company ("NICO") is an affiliate of Berkshire Hathaway, and at all relevant times acted as Plaintiffs' reinsurer.

**B.    Defendants Fraudulently Induce Seaton and Stonewall to Enter into the Administration Agreements**

In March 1999 and September 2000, Seaton and Stonewall entered into the Administration Agreements with Cavell. Prior to entering into those agreements, Defendants represented to Seaton and Stonewall that Cavell was a market leader in providing run-off services, including claims administration, that Cavell would exercise independence in its role as claims administrator, that Defendants would utilize their expertise to work toward maximizing the value of Seaton and Stonewall, and that Defendants would at all times safeguard Seaton and Stonewall's economic and other interests. Relying on these representations, Plaintiffs entered into the Administration Agreements. See, e.g., Am. Compl. ¶¶ 1-4, 11-15.

Unbeknownst to Plaintiffs, Defendants had already wholly abdicated their claims authorities and responsibilities to NICO, giving NICO unfettered discretion and control over the management of the Companies' claims. This was especially egregious because NICO was the

-3-

Companies' loss portfolio reinsurer and, as such, had interests that were diametrically opposed to Plaintiffs' interests in connection with the running-off of Plaintiffs' business. See, e.g., Am. Compl. ¶¶ 1-4.

In late 2005, Seaton and Stonewall discovered that Cavell's and Randall's representations about Cavell's role as run-off manager were false and that, in fact, Defendants had ceded control of the administration of Plaintiffs' claims to NICO. Am. Compl. ¶¶ 26, 41. Plaintiffs immediately sought to terminate their relationship with Cavell and Randall. Id. ¶ 63.

On February 17, 2006, Plaintiffs and Defendants formalized this termination in writing by executing a document (the "Term Sheet"). Am. Compl. ¶ 64. The Term Sheet called for the termination of the contractual and commercial relationships between Cavell and the Companies and for the handover of run-off management to the Companies and/or their designated representatives. Id. ¶ 65. The Term Sheet also released certain claims by Seaton and Stonewall against Cavell, but it expressly preserved the Companies' right to pursue claims sounding in fraud. Id. To that end, Clause 13 of the Term Sheet provides:

> Dukes Place [owner of Seaton and Stonewall] hereby releases and forever discharges Randall of and from all actions, causes of action, suits, claims and demands whatsoever, whether at law or equity . . . which Dukes Place ever had, now has or hereafter can, shall or may have against Randall . . . arising out of or in connection with any business, commercial, contractual or other arrangements between or involving either of them as at the date of this Term Sheet, save . . . in the case of fraud on the part of Randall.

Ex. O at ¶ 13.

## C.    Procedural History of this Action

On August 6, 2007, Seaton and Stonewall commenced the NY Action. The Complaint asserts two claims against Defendants: (1) that, as a result of Defendants' failure to disclose their intention to cede claims control to NICO, Plaintiffs were fraudulently induced to

enter into the Administration Agreements; and (2) Defendants engaged in unfair or deceptive business practices in violation of M.G.L. c. 93A, a Massachusetts statute.

On October 19, 2007, Defendants moved to dismiss the complaint, asserting that the complaint should be dismissed because:  (1) New York was an improper venue because the Term Sheet contains an English forum selection provision; (2) the Court lacked subject matter jurisdiction over the dispute as a result of the Term Sheet's forum selection provision; and (3) the complaint failed to state a claim upon which relief could be granted because the Administration Agreements granted Defendants the authority to delegate the Companies' claims functions to NICO.[3]

Plaintiffs opposed Defendants' motion, pointing out, inter alia, that (1) the forum selection provision in the Term Sheet is inapplicable to Plaintiffs' fraud claims – and cannot be used to attack venue or the Court's jurisdiction – because fraud claims are expressly excluded from the ambit of the Term Sheet; (2) Defendants' delegation argument was factually untenable and logically infirm.[4]  The parties completed briefing on the motion on January 11, 2008.  The Court has not yet issued a decision on the motion.

D.    **The UK Action**

On November 20, 2007, one month after Cavell and Randall filed their Motion to Dismiss the NY Action, they commenced the UK Action by filing a "Claim Form" with the UK court.  However, notice of the action was not served on Plaintiffs until January 10, 2008, and the UK Action remains in its preliminary stages.

---

[3]    See Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint, dated October 19, 2007.

[4]    See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, dated November 21, 2007.

The claims asserted in the UK Action are essentially duplicative of the claims made here. Thus, in the UK Action, Defendants seek:

1) A declaration that the claims asserted by Seaton and Stonewall in the NY Action "have been fully compromised and/or released pursuant to clause 13 of the Term Sheet" (see Ex. B at 3 ¶ 1);

2) A declaration that, "by virtue of clause 13 of the Term Sheet . . . [Cavell and Randall] have no liability to [Seaton and Stonewall] in respect of the claims contained in the Complaint" (see id. at 3 ¶ 2); and

3) Damages for alleged breaches of the Term Sheet arising out of (a) Seaton and Stonewall "causing two US Arbitration Panels hearing disputes between them and [NICO] to issue a series of document and deposition subpoenas against [Cavell and Randall] 19 February 2007" that were enforced by the United States District Court for the District of Connecticut; and (b) Seaton and Stonewall filing the NY Action. (see id. at 3 ¶ 3(a)-(c)).

Thus, the Claim Form, which incorporates by reference the Complaint in the NY Action, essentially asks the UK court to make rulings on the very issues that are before this Court. Indeed, Defendants concede that the UK Action was filed because they "would feel more comfortable in the English courts." Ex. L.

After receiving the Claim Form, Plaintiffs notified the UK court that they did not believe that the English court has jurisdiction over the parties' dispute. See Ex. C. Plaintiffs thereafter asked Defendants to agree to a voluntary stay of the UK Action, pending this Court's decision on the motion to dismiss, in order to minimize cost and avoid duplication of efforts in the two actions. Defendants refused to agree to such a stay. See Exs. D-F. Consequently, on February 15, 2008, Plaintiffs sought an order from the English court, requesting a stay of the UK Action until after this Court issues its decision on the motion to dismiss. See Ex. G. On March 4, 2008, the English court issued an order granting the requested stay and ordering Defendants to pay the costs of Seaton's and Stonewall's application. See Ex. H. That same day, Defendants' UK counsel wrote the UK court, advising the Court that they are considering their "client's

options to have the Order set aside, varied or stayed." In that letter, Defendants contend, incorrectly, that the motion to dismiss pending before this Court does not raise the issue of whether the Complaint has properly alleged a fraud claim. In particular, Defendants state:

> [W]e consider that there is a threshold issue which it is proper for the English Court to decide as soon as possible which is distinct from the jurisdictional issue currently raised in the pending Motion to Dismiss before the Southern District of New York. That threshold issue is the issue of whether the allegations being made against the Claimants in New York are allegations of 'fraud' . . . as that term is used in the release contained in clause 13 of the Term Sheet. The longer the New York proceedings continue, the more apparent it becomes to us that the allegations being made in that Court are not, in substance, allegations of "fraud" (under English law) against Mr. Randall and Cavell.

Ex. I. This issue was, in fact, raised by Defendants in their motion to dismiss, and it was vigorously contested by Plaintiffs in their opposition thereto.[5] Moreover, Defendants have already <u>conceded</u> that they do <u>not</u> contest the particulars of Plaintiffs' fraud claim here. <u>See</u> Ex. M (conceding that "Cavell and Mr. Randall did not move to dismiss pursuant to Rule 9(b)").

---

[5] <u>Compare</u> Defendants' amended Reply Brief in Further Support of Motion to Dismiss, dated January 3, 2008, at 1-5, arguing that the Complaint fails to make out a claim for fraud under English law <u>with</u> Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, dated November 21, 2007, at 13 ("By its express terms, the choice of law and forum selection provisions [in the Term Sheet] apply only to claims arising from '[t]his Term Sheet,' thereby excluding the fraud claims asserted in this action from those provisions.").

## <u>ARGUMENT</u>

## <u>DEFENDANTS SHOULD BE ENJOINED FROM PROSECUTING THE UK ACTION</u>

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum." <u>Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.</u>, 369 F.3d 645, 652 (2d Cir. 2004) (<u>citing China Trade & Dev. Corp. v. M.V. Choong Yong</u>, 837 F.2d 33, 35 (2d Cir. 1987)).  Indeed, as discussed in detail below, where, as here, the foreign proceeding seeks to effectively usurp a U.S. court's jurisdiction, an anti-suit injunction <u>should</u> issue.

## A.    <u>The Parties And The Issues To Be Resolved In The Two Actions Are The Same</u>

To obtain an anti-suit injunction, the moving party must make two threshold showings:  (1) that the parties to actions are the same; and (2) that "the resolution of the case before the enjoining court would be dispositive of the enjoined action." <u>China Trade</u>, 837 F.2d at 36.  Complete identity is not required; rather, substantial similarity will suffice.  <u>See Suchodolski Assocs. v. Cardell Fin. Corp.</u>, Nos. 03 Civ. 4148, 5732, 2006 WL 3327625, at *2 (S.D.N.Y. Nov. 16, 2006) (noting that the threshold criteria are met where the issues and parties before the two actions are "substantially similar"); <u>SG Avipro Fin. Ltd. v. Cameroon Airlines</u>, No. 05 Civ. 655, 2005 WL 1353955, at *3 (S.D.N.Y. June 8, 2005) (U.S. action would be dispositive of foreign action in which defendant made similar legal arguments).

Here, Defendants have presented the identical arguments to this Court and the UK court for resolution.  In particular, the UK Action seeks a declaration that the claims set forth in Seaton and Stonewall's Complaint in this action are not valid claims and that the Defendants have no liability to Seaton and Stonewall with respect to the events described in the Complaint,

because those claims have been effectively released by clause 13 of the Term Sheet.  <u>See</u> Ex. B

at 3 ¶¶ 1-2 ("all of the claims advanced by [Seaton and Stonewall] in the Complaint . . . have

been fully compromised and/or released pursuant to clause 13 of the Term Sheet" and that "by

virtue of the clause 13 of the Term Sheet . . . the Claimants [Randall and Cavell] have no liability

to [Seaton and Stonewall] in respect of the claims contained in the Complaint").  Clause 13 of

the Term Sheet provides that:

> Dukes Place [which is defined to include Seaton and Stonewall]
> hereby releases and forever discharges Randall [which is defined
> to include Defendants here] of and from all actions, causes of
> action, suits, claims and demands . . . arising out of or in
> connection with any business, commercial, contractual or other
> arrangement between or involving either of them as at the date of
> this Term Sheet, <u>save . . . in the case of fraud on the part of Randall</u>
> which, again, is defined to include Defendants here].

Ex. O at ¶ 13 (emphasis added).  And Defendants' most recent submission to the UK court

expressly states that they are asking the UK Court to find that the claims in the NY Action do not

constitute fraud.  In asking the UK court to reconsider the issuance of a stay of that proceeding

pending a decision on the motion to dismiss here, Defendants concede that:

> [The] threshold issue is whether the allegations being made against
> the [Defendants] in New York are allegations of "fraud" as that
> term is used in the release contained in clause 13 of the Term
> Sheet.

Ex. I.  But these very issues – namely (1) who has jurisdiction to hear the dispute set forth in the

Complaint and (2) whether the Complaint properly alleges a cause of action for fraud – are

already before this Court.

Indeed, Defendants' papers in support of their motion to dismiss this action set

forth the identical arguments that Defendants now ask the UK court to consider.  In particular,

Defendants contend that this Court does not have jurisdiction over this matter because it was released via clause 13 of the Term Sheet:

> The Term Sheet encompasses all commercial and contractual agreements between the Defendants and the Companies, including the Administration Agreements. Indeed pursuant to the Term Sheet, the Companies released and forever discharged Defendants from all lawsuits or claims arising out of or in connection with their commercial relations, past or present, as of the date of the Term Sheet. Id., ¶ 13.

Ex. N at 6. As Plaintiffs pointed out in their opposition, Defendants' argument ignores that fraud claims – such as those alleged in the Complaint are expressly carved out of the release contained in the Term Sheet, and Plaintiffs are entitled to pursue their fraud claims against Randall in this Court.

Thus, the two actions seek resolution of the same issues – namely whether this Court has jurisdiction over the parties' dispute and whether Plaintiffs have properly alleged a claim for fraud – and the threshold requirements are satisfied. See Nagoya Venture Ltd. v. Bacopulos, No. 96 Civ. 9317, 1998 WL 307079, at *5 (S.D.N.Y. June 11, 1998) (threshold requirements satisfied where foreign action sought, inter alia, declarations as to the U.S. court's jurisdiction and legal authority).

**B.    The Purported Dispute Concerning Subpoenas Issued in Another Proceeding Is Irrelevant to Plaintiffs' Motion**

In addition to seeking to avoid the language of clause 13 of the Term Sheet and thereby evading this Court's jurisdiction, the UK Action also seeks to penalize Seaton and Stonewall for having sought discovery – pursuant to subpoenas – in connection with their disputes with a non-party.

As a threshold matter, even if this Court were to determine that Defendants are entitled to pursue claims related to the arbitral subpoenas in the UK, it would be within the

Court's authority to issue an injunction prohibiting Defendants from continuing to prosecute the claims relating to the NY Complaint. See Suchodolski, 2006 WL 3327625, at *3 ("Even if the [foreign] Complaint did assert a distinct, non-arbitrable claim against [the third-party defendant], this Court would order plaintiffs to amend the [foreign] Complaint to assert only that claim").

Moreover, Defendants' objections to the subpoenas have already been fully adjudicated by the U.S. District Court for the District Court of Connecticut.[6] See Ex. J. Indeed, Defendants, in their motion to quash the subpoenas which was filed more than a year ago, expressly argued that the issuance of the subpoenas and Seaton's efforts to enforce the subpoenas breached the Term Sheet. See Ex. K at 20. The District Court rejected this argument in denying the motion. See Ex. J at 10. Such repeated attempts to litigate the same dispute are by definition vexatious. See Karaha Bodas Co., LLC v. Perushaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 127 (2d Cir. 2007); Paramedics Electromedicina, 369 F.3d at 653.

## C. All Of The Discretionary Factors Demonstrate That Cavell And Randall Should Be Enjoined From Proceeding With The UK Action

"Once the threshold requirements are met, the issue becomes one of informed discretion." Motorola Credit Corp. v. Uzan, No. 02 Civ. 666, 2003 WL 56998, at *3 (S.D.N.Y. Jan. 7, 2003). In exercising its discretion, the Court should consider five factors: (1) whether the foreign action would frustrate an important public policy of the enjoining forum; (2) whether the foreign action would be vexatious; (3) whether the foreign action represents a threat to this Court's jurisdiction; (4) whether the foreign proceedings prejudice other equitable

---

[6] Even if the matter had not already been conclusively resolved by the U.S. District Court for the District of Connecticut, there is simply no legal basis for Defendants' assertion that Defendants' right to discovery of information in any judicial proceedings against third parties was somehow waived by the Term Sheet. In fact, the Term Sheet says nothing about discovery and, indeed, expressly acknowledges that all causes of action against third parties are expressly reserved. See Ex. O. Thus, Defendants were clearly on notice that Plaintiffs were contemplating suits against third parties, and that those suits were expressly carved out of the Term Sheet.

considerations; and (5) whether the adjudication of the same issue in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment. See China Trade, 837 F.2d at 35; American Home Assur. Co. v. Insurance Corp. of Ir. Ltd., 603 F. Supp. 636, 643 (S.D.N.Y. 1984).

While all five discretionary factors are relevant to the court's inquiry, an anti-suit injunction is especially appropriate when a foreign action threatens the enjoining court's jurisdiction or its strong public policies. See Karaha Bodas, 500 F.3d at 119, 126 (recognizing that "greater significance" should be afforded to these two factors); China Trade, 837 F.2d at 36-37; Paramedics Electromedicina, 369 F.3d at 652-55 (affirming issuance of anti-suit injunction where the foreign proceeding amounted to an attempt to evade a U.S. proceeding). As demonstrated below, the UK Action threatens all five factors. Consequently, an injunction is warranted.

**1.     The UK Action Constitutes a Threat to This Court's Validly Invoked Jurisdiction**

It is well-settled that an anti-suit injunction should issue to protect a US court's jurisdiction. See China Trade, 837 F.2d at 36 ("if a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may also be necessary to protect the enjoining court's jurisdiction"); Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 20 (1st Cir. 2004) ("Where, as here, a party institutes a foreign action in a blatant attempt to evade the rightful authority of the forum court, the need for an antisuit injunction crests"); Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 930 (D.C. Cir. 1984) (granting injunction because "[t]his is not a situation where two courts are proceeding to separate judgments simultaneously under one cause of action. Rather, the sole purpose of the English proceedings is to *terminate* the American

action") (emphasis in original); <u>Mutual Serv. Cas. Ins. Co. v. Frit Indus., Inc.</u>, 805 F. Supp. 919, 925 (M.D. Ala. 1992) (granting anti-suit injunction to preserve district court's jurisdiction and its ability to reach judgment on the matter before it), <u>aff'd</u>, 3 F.3d 442 (11th Cir. 1993).[7]

Here, Cavell and Randall frankly admit that they initiated the UK Action simply because they "would feel more comfortable in the English courts." Ex. L. And the Claim Form filed by Defendants in the UK Action is clearly intended to evade any decision in this action that Defendants consider to be adverse to their interests. Specifically, the UK Action seeks a declaration that Cavell and Randall have "no liability" to Plaintiffs "in respect of the claims contained in the Complaint." Ex. B at 3 ¶ 2. Thus, Defendants initiated the UK Action in an improper attempt to evade an adverse outcome in this Action. Such tactics are highly improper and should not be countenanced by US courts. <u>See</u> <u>Paramedics Electromedicina</u>, 369 F.3d at 654-55 (anti-suit injunction necessary because "a foreign court might not give res judicata effect to a United States judgment") (citations omitted); <u>Quaak</u>, 361 F.3d at 20 ("Where, as here, a party institutes a foreign action in a blatant attempt to evade the rightful authority of the forum court, the need for an antisuit injunction crests"); <u>Laker Airways</u>, 731 F.2d at 930 (anti-suit injunction warranted where "the clear thrust of the requested relief [in the foreign action] was the termination of the United States antitrust claim").

---

[7]    Some courts describe this factor as "a threat to the issuing court's in rem or quasi in rem jurisdiction." <u>American Home</u>, 603 F. Supp. at 643. However, courts in the Second Circuit have recognized that this factor applies equally to foreign actions that represent a threat that the general jurisdiction of the enjoining forum. <u>See id.</u>; <u>China Trade</u>, 837 F.2d at 36 ("Even in <i>in personam</i> proceedings, if a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may also be necessary to protect the enjoining court's jurisdiction"); <u>Karaha Bodas</u>, 500 F.3d at 126 (turning first to the factors that have "greater significance," which are "whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum") (citation and internal quotation marks omitted); <u>Paramedics Electromedicina</u>, 369 F.3d at 654 (noting that, in the context of an <i>in personam</i> proceeding, the threat to the enjoining court's jurisdiction warranted the issuance of an anti-suit injunction).

**2.    The Remaining Discretionary Factors Also Support The Issuance of An Injunction Here**

While Defendants' attempt to evade this Court's jurisdiction is sufficient by itself to support the grant of an injunction, <u>all</u> of the remaining factors support the issuance of the injunction.

<u>First</u>, the UK Action constitutes a vexatious action.   While it is true that "vexatiousness is likely to be present whenever parallel actions are proceeding concurrently," the situation presented by the UK Action does not represent the typical parallel proceeding.  Instead, the primary purpose of the UK Action is to undo any adverse result in this action and to penalize U.S. residents from seeking to enforce their rights in the U.S. courts.   This too favors the issuance of an injunction.  See <u>Karaha Bodas</u>, 500 F.3d at 126 ("Proceedings are apt to be especially vexatious, however, where a foreign proceeding threatens to undermine a federal judgment"); <u>Nagoya Venture</u>, 1998 WL 307079, at *5 (finding it necessary and appropriate to issue an injunction because, in pertinent part, the foreign action appeared to be "little more than efforts at vexation and harassment").

<u>Second</u>, allowing Defendants to proceed with the UK Action would threaten important public policies of the United States.  In addition to attempting to penalize Plaintiffs for seeking discovery from two arbitral panels, which was sanctioned by a U.S. District Court, the UK Action represents an improper attempt by foreign Defendants to effectively deny U.S. residents their rightful access to the U.S. courts.  See <u>Laker Airways</u>, 731 F.2d at 929 ("When the availability of an action in the domestic courts is necessary to a full and fair adjudication of the plaintiff's claims, a court should preserve that forum").  Moreover, "[t]he United States has an interest in maintaining New York's status as one of the foremost commercial centers in the world."  <u>L'Europeenne de Banque v. La Republica de Venez.</u>, 700 F. Supp. 114, 122 (S.D.N.Y.

1988); see also Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 173 (S.D.N.Y. 2006) (New York has a strong interest in "'maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the Nation and the world. That interest naturally embraces a very strong policy of assuring ready access to a forum for redress of injuries arising out of transactions spawned here'") (quoting Marine Midland Bank, N.A. v. United Mo. Bank, N.A., 643 N.Y.S.2d 528, 531 (1st Dep't), lv. to appeal dismissed, 672 N.E.2d 609 (N.Y. 1996)); Pravin Banker Assocs., Ltd. v. Banco Popular del Peru, 895 F. Supp. 660, 665 (S.D.N.Y. 1995) (reiterating the U.S. interest "in maintaining New York's status as one of the foremost commercial centers in the world, and as an international clearing center for United States dollars"), aff'd, 109 F.3d 850 (2d Cir. 1997). Here, Defendants are alleged to have fraudulently induced Plaintiffs – insurance companies resident in the United States – to enter into contracts, which were governed by New York law and whose disputes were to be resolved in a New York forum. And while Plaintiffs' claims do not arise under the contracts, it cannot seriously be disputed that New York has a strong interest in ensuring that contracts subject to its laws and oversight are not procured by fraudulent means.

In addition, an anti-suit injunction is proper here because of New York's strong interest in enforcing statutes concerning unfair and deceptive business practices. See Laker Airways, 731 F.2d at 934 (finding the issuance of an injunction necessary, in part, to "prevent the evasion [by defendants] of important domestic [anti-trust] laws governing [defendants'] conduct of business within the United States"). It is unlawful in both New York and Massachusetts to engage in unfair methods of competition and unfair or deceptive business practices, and the two states' statutes promote and embrace the same public policy goals. See New York by Lefkowitz v. Colorado St. Christian Coll. of Church of Inner Power, Inc., 346 N.Y.S.2d 482, 488 (Sup. Ct. Kings Co. 1973) (state statutes that outlaw deceptive acts and practices, including both the

statutes in Massachusetts and in New York, are "all modeled substantially upon the Federal Trade Commission Act of 1915"); Purity Sup., Inc. v. Attorney Gen., 407 N.E.2d 297, 301 (Mass. 1980) ("Chapter 93A was enacted in 1967, partly in response to an FTC policy to stop unfair practices on a State level before they become interstate problems"). Thus, Defendants' potential evasion of the Massachusetts statute frustrates and threatens the public policy – of both Massachusetts and New York – of protecting U.S. residents from deception and unfair business practices. See Lefkowitz, 346 N.Y.S.2d at 487 (noting that New York's unfair and deceptive business practices statute is intended "'to protect both consumer and honest businessmen from the many varied forms of deception'") (citation omitted).

Third, allowing Defendants to continue with the UK Action would prejudice a number of equitable considerations, including the Court's interest in deterring forum shopping. See Ibeto Petrochem. Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 64 (2d Cir. 2007) (issuance of anti-suit injunction was proper, inter alia, to deter forum shopping). Additionally, by allowing the Defendants to proceed with the UK Action, the Court would in effect be sanctioning Defendants' attempt to penalize Plaintiffs for enforcing their legal rights in the U.S. See Ex. B at 3 ¶ 3(c). Such "in terrorem tactics" represent a direct threat to the power of U.S. Courts. See Quaak, 361 F.3d at 20.

Fourth, adjudication of the same issues in both the N.Y. and U.K. Actions would result in delay, inconvenience, expense, inconsistency, and/or a race to judgment. If Defendants were permitted to proceed with the U.K. action, Seaton and Stonewall would be subject to the inconvenience and expense of re-litigating the same issues, this time in a court located half-way around the world. Indeed, Plaintiffs are already experiencing this, since Defendants have refused to agree to allow the jurisdictional issue already before this Court to be resolved before forcing Plaintiffs to engage in motion practice before the UK court. See Exs. D-F, I. Moreover, as

discussed above, there is a very real risk of inconsistency here, since the UK Action blatantly seeks to avoid any adverse ruling by this Court.  Thus, an injunction is necessary not only to protect the jurisdiction of this Court but also to prevent the inconvenience, unnecessary expense and potential for inconsistent results.  See Nagoya Venture, 1998 WL 307079 at *5.

*       *       *

In sum, all five discretionary factors demonstrate that Defendants Cavell and Randall should be enjoined from prosecuting the UK Action.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order enjoining Cavell and Randall from prosecuting their UK Action and for such further and other relief as this Court deems appropriate.

Dated:     New York, New York
           March 4, 2008

CADWALADER, WICKERSHAM & TAFT LLP


By:_____/s/ Elizabeth Butler_____
            Elizabeth Butler (EB-6594)


One World Financial Center
New York, New York 10281
Tel.: (212) 504-6000
Email: liz.butler@cwt.com

Attorneys for Plaintiffs Seaton Insurance Company
and Stonewall Insurance Company

Of Counsel:

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
Tel.: (973) 538-0800