**EXHIBIT J**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SEATON INSURANCE COMPANY,          :

           Plaintiff,          :

                       :

v.                           Civ. No. 3:07-cv-356 (AHN)

                       :

CAVELL USA, f/k/a KEN RANDALL  :
AMERICA, INC., f/k/a EASTGATE,
INC.; KEN E.  RANDALL, and          :
PAMELA HOELSKEN,
                       :

           Defendants.          :

                       :

<u>RULING ON PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF</u>

This is an action to enforce subpoenas in an arbitration proceeding pursuant to 9 U.S.C. § 7.  Plaintiff Seaton Insurance Company ("Seaton") filed a motion for injunctive relief seeking to enforce subpoenas issued by the arbitration panel to the defendants Cavell USA ("Cavell"), Ken E. Randall ("Randall") and Pamela Hoelsken ("Hoelsken").

The parties to the underlying arbitration proceeding are Seaton and the plaintiff-intervenor in this action, National Indemnity Company ("NICO").[1]  The issues in the arbitration proceeding involve the right to manage Seaton's run-off claims.[2]

---

[1] NICO has moved to intervene in this action on the grounds that it also needs the defendants to comply with the subpoenas and to appear with records so that it may properly defend against Seaton's counterclaims of mismanagement.  Seaton and the defendants do not object.  NICO's motion [doc. #10] is granted.

[2] "Run-off" claims are limited to payment and administration of existing policies.

The presiding arbitration panel, sitting in Connecticut, issued subpoenas to the defendants, seeking testimony and documents that Seaton says are relevant to its claims against NICO.  The defendants have informed Seaton that they will not comply with the subpoenas without a court order directing them to do so.  Thus, Seaton and NICO now seek to enforce the arbitration panel's subpoenas.[3]  The defendants are not parties to the arbitration, but have had numerous business dealings with both Seaton and NICO.

## BACKGROUND

In 1998, Seaton[4] entered into a reinsurance agreement with NICO, whereby NICO agreed to reinsure Seaton's liabilities up to $327 million in exchange for the up-front payment of a premium in the amount of $191 million.  Seaton then hired Cavell to be the run-off agent and to manage the underlying claims.[5]  In exchange for its services, Seaton paid Cavell $2 million.  Defendants Randall and Hoelsken are Chairman of the Board and CFO of Cavell,

---

[3] NICO joins Seaton's motion insofar as it seeks records and other documents.  It does not seek to enforce the subpoenas to obtain testimony from the defendants or to enforce the subpoena to Randall.

[4] Seaton's predecessor, Unigard, was the original party to the reinsurance agreement at its execution.

[5] A "run-off agent" is a company that is not underwriting new insurance business, but only administers and monitors existing policies through their expirations.  This includes all business not covered or assumed by the reinsurance agreement.

2

respectively.  The reinsurance agreement between NICO and Seaton contains an arbitration clause providing that all disputes between the parties would be arbitrated in New York, New York and would be governed by New York law.

The fact discovery deadline in the arbitration proceeding is April 30, 2007.  On February 19, 2007, the arbitration panel issued subpoenas to Cavell's custodian of records, directing it to appear with records and testify on March 14, 2007 in Hartford, Connecticut.  On the same day, it issued subpoenas to Randall and Hoelsken directing them to appear and testify on March 21, 2007. The subpoenas were served on February 21, 2007.  On March 1, 2007, the defendants stated that they would not comply with the subpoenas absent a court order to appear.  The arbitration panel's dates for compliance with the subpoenas are now March 27- 30, 2007.

For the following reasons, the court grants Seaton's motion for injunctive relief enforcing the subpoenas as to Cavell and Hoelsken, but denies injunctive relief enforcing the subpoenas as to Randall.

<u>JURISDICTION</u>

The court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity among the parties and the amount in controversy exceeds $75,000.  This basis for jurisdiction is independent of 9 U.S.C. § 7.  <u>See</u>

3

Stolte-Nielsen v. Celanese AG, 430 F.3d 567, 572 (2d Cir. 2005).

## DISCUSSION

Seaton argues that the records and testimony it seeks from the defendants are critical to its ability to prove NICO's mismanagement of claims, the central issue in the pending arbitration proceeding.  It maintains that pursuant to Fed. R. Civ. P. 45(b)(2), it effected proper service on the defendants at their business address in Cambridge, Massachusetts, which they assert is within 100 miles of Hartford, Connecticut, the site of the arbitration proceeding.[6]

The defendants oppose the subpoenas on three grounds. First, they argue that the arbitration clause in Seaton and NICO's agreement specified that arbitration would be governed by New York law and designated New York, New York as the site of arbitration.  Based on these designations in the arbitration agreement, the defendants, who are not parties to that agreement, contend that the arbitration panel cannot "sit" in Connecticut for the sole purpose of issuing nonparty subpoenas.  The panel's move to Connecticut, they argue, does not confer jurisdiction on this court to enforce the subpoenas.  The court finds the

---

[6] At the hearing on this matter, the defendants conceded that the 100-mile limit of Rule 45 was satisfied.

4

defendants' argument unpersuasive.[7]

Section 7 of the Federal Arbitration Act states that an arbitrator's summons "shall be served in the same manner as subpoenas to appear and testify before the court." See 9 U.S.C. § 7. Section 7 also provides that the district court in the district in which the arbitrators are sitting may enforce such a summons by compelling attendance or punishing a non-attendee for contempt "in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." Id.; see Dynergy Midstream Services v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006). Section 7 clearly authorizes the arbitration panel to issue subpoenas to compel non-parties to appear and provide testimony and documents to the arbitration panel at a hearing in connection with the arbitrators' consideration of the dispute before them. See Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 581 (2d Cir. 2005).

There is no dispute that Seaton and NICO seek to have the defendants provide documents and testimony in a "formal arbitration hearing" in Hartford, Connecticut. The fact that the

---

[7] The court also questions how the defendants, who are not parties to the arbitration or to the agreement to arbitrate, have standing to challenge the parties' and the arbitration panel's decision to hold the arbitration hearing in Connecticut. At oral argument, counsel for the defendants was unable to provide a satisfactory answer to the court's inquiry on this issue.

location of the arbitration hearing will be held at a location
other than the one designated by the arbitration agreement does
not have any bearing on the propriety of the subpoenas issued
pursuant to section 7.  Indeed, the defendants have not
identified nor can the court find any statute or rule that
prevents the parties to an arbitration agreement from mutually
agreeing to move the arbitration to a location other than the one
designated in an arbitration agreement, even when the sole reason
for doing so is to obtain testimony and documents from witnesses
who would not be subject to subpoenas in the contractually
designated location.  Accordingly, absent such authority and
under the standard set forth in Stolt-Nielsen, the subpoenas are
enforceable.  Because the arbitration is taking place in
Hartford, and thus within this district, this court may enforce
the subpoenas pursuant to Fed. R. Civ. P. 45.

　　　Second, the defendants argue that Seaton is improperly using
the arbitration subpoenas to obtain documents and other discovery
solely to use in future litigation against the defendants.  They
argue that such pre-litigation discovery should not be allowed
and that the court should not "blind itself to the purpose for
which the party seeks the information." Nicholas v. Poughkeepsie
Savings Bank, 1991 WL 113279 at *2 (S.D.N.Y. June 14, 1991).
Thus, they assert that because the real purpose of the subpoenas
is to "gather information for use in proceedings other than the

pending [arbitration]," the subpoenas should not be enforced.
See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 353 n. 17
(1978).

In support of this assertion, the defendants point out that
Seaton sent a draft complaint to them styled Seaton v. Cavell
USA, though to date Seaton has not instituted any action against
them. The court finds this argument to be premature and
speculative and thus not a valid basis for quashing the
subpoenas. The defendants have not shown that Seaton actually
intends to institute litigation against them at any point in the
near future. While Seaton may have sent a draft complaint to the
defendants in July 2006, almost eight months ago, to date Seaton
has not filed suit. But even if future litigation was
contemplated, that would not foreclose Seaton's right to obtain
information from the defendants which it needs to defend itself
in the pending arbitration proceeding, and Seaton has made a
compelling case that the documents and testimony are relevant to
its claims against NICO. Thus, the defendants' argument is
without merit.

Third, the defendants contend that under Fed. R. Civ. P. 45,
Randall is not subject to subpoena in Connecticut because he does
not reside, is not employed, and does not regularly transact
business in person within 100 miles from the site of the
arbitration proceedings. Rather, they assert that Randall is a

7

citizen of the United Kingdom, works in England, and does not regularly transact business in person in Cavell's Massachusetts office.  Thus, they maintain that the court cannot enforce the subpoena issued against him.  The court agrees.

A court cannot enforce a subpoena upon an individual outside of the 100-mile radius set forth in Fed. R. Civ. P. 45.  See Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 95-96 (2d Cir. 2006); see also Price Waterhouse LLP v. First Am. Corp., 182 F.R.D. 56, 63-64 (S.D.N.Y. 1998) (concluding that the court could not modify a subpoena that sought the appearance of residents of England for a deposition in New York to provide instead that the deposition take place in London, because such a modification would "create a subpoena that does not issue from 'the district in which the deposition is to be taken,'" in violation of Rule 45(a)(2)).

Further, Seaton did not effect proper service of the subpoena on Randall, as he is a citizen of the United Kingdom, and Seaton's attempt to serve a subpoena on him at Cavell's office in Massachusetts is a "transparent attempt" to circumvent the Hague Convention's requirements for taking evidence abroad. See Laker Airways Ltd. v. Pan American World Airways, et al., 607 F. Supp. 324, 326 (S.D.N.Y. 1985).

Finally, the defendants argue that Seaton's request is overly burdensome, because (1) Seaton already has access to the

8

documents that it seeks; (2) the subpoenas seek voluminous
amounts of documents that are in located in offices and with
entities around the world; (3) complying with the subpoenas would
create significant expense and inconvenience.  They argue that
nonparties are entitled to even more protection from unduly
burdensome discovery requests than parties, especially when the
requests would require significant expense, see Fed. R. Civ. P.
45(c)(2)(B).

This argument is one properly brought before the arbitration
panel.  See Stolt-Nielson SA v. Celanese AG, 430 F.3d 567, 580
(2d Cir. 2005).  The panel can narrow the discovery requests if
it sees fit to do so, as it was the entity that issued the
subpoenas in the first place.

The defendants have provided no reason why the court should
not enforce the arbitration panel's subpoenas.  Moreover, Seaton
and NICO have shown that they will be irreparably harmed in the
ongoing arbitration proceedings if they are unable to obtain the
documents and testimony they seek from Cavell and Hoelsken.  Both
Seaton and NICO have shown that the information to be obtained by
the subpoenas is central to the claims before the arbitration
panel.  Further, because the court finds that, with the exception
of Randall, the arbitration panel has authority under 9 U.S.C. §
7 to issue the subpoenas and that it properly issued the
subpoenas within Connecticut, and within the 100-mile radius set

9

forth in Fed. R. Civ. P. 45, the plaintiffs have prevailed on the merits and are entitled to injunctive relief. <u>See</u> <u>Lusk v.</u> <u>Village of Cold Spring</u>, 475 F.3d 480, 485 (2d Cir. 2007)(stating that the only difference between the standard for granting a preliminary injunction and a permanent injunction is that the latter requires actual, rather than a likelihood of, success on the merits). Finally, the injury that Seaton and NICO would suffer is not remote, because the panel only has three available days to conduct proceedings in Connecticut.

<u>CONCLUSION</u>

For the foregoing reasons, NICO's motion to intervene [doc. #10] is GRANTED. Seaton's motion for injunctive relief [doc. # 4] is GRANTED as to defendants Cavell and Hoelsken, but DENIED as to Randall. The defendants' motion for order denying injunctive relief [doc. # 25] is GRANTED as to Randall, and denied as to defendants Cavell and Hoelsken. The defendants Cavell and Hoelsken are directed to appear, testify and produce books, records and documents according to the command of the subpoenas at the offices of Pepe & Hazard LLP, Goodwin Square, Hartford, Connecticut, on the dates of March 27-30, 2007.

SO ORDERED this ____ day of March 2007, at Bridgeport, Connecticut.

```
                    _____/s/_____
                         Alan H. Nevas
                    United States District Judge
```

10

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SEATON INSURANCE COMPANY, | Civil Action No. 3-07-356 |
| Plaintiff, | |
| v. | |
| CAVELL USA INC., f/k/a KEN RANDALL AMERICA, INC., f/k/a EASTGATE, INC. KEN E. RANDALL, and PAMELA HOELSKEN, | STIPULATION |
| Defendants. | |

**IT IS HEREBY STIPULATED AND AGREED** by and between Plaintiff, Seaton Insurance Company ("Seaton") and Defendants Cavell USA Inc. ("Cavell") and Pamela Hoelsken (collectively, "Defendants") as follows:

1.    The Subpoenas served on Defendants in connection with the above-captioned matter will be treated as if served in connection with both I/M/O Arbitration Between National Indemnity Company and Seaton Insurance Company (the "Seaton Arbitration") and I/M/O Arbitration Between National Indemnity Company and Stonewall Insurance Company (the "Stonewall Arbitration").

2.    Except as set forth in paragraph four of the Stipulation, Defendants agree to produce all non-privileged documents responsive to the Subpoenas, as identified in the Subpoenas and on a rolling basis, with the last of such documents to be produced by April 20, 2007.

3.    All documents produced are confidential and will not be used in any other proceedings or actions, and all documents and any additional copies will be returned to Cavell at

the time awards are entered in connection with the Seaton Arbitration and the Stonewall Arbitration.

4.      Defendants reserve the right to raise objections to the Arbitration Panel with regard to the following responsive documents issues, and expressly waive the right to object to any other documents or issues in connection with the Subpoenas:

      a) documents that are not within the direct possession, custody or control of Cavell or Ms. Hoelsken, but rather are in the possession, custody and control of Cavell's English affiliates and parent, or of Defendant Ken E. Randall;

      b) documents sent by Cavell and its affiliates and parent to the Rhode Island Department of Insurance and the Pennsylvania Department of Insurance that are not in the public record;

      c) documents responsive to paragraphs 7, 14, 17, 20 and 21 of the Custodian of Records subpoena and paragraphs 2, 3, 6, 7, 8, 9, 14 and 25 of the Hoelsken subpoena; and

      d) the request that Cavell receive compensation consisting of reimbursement of the salary it pays to Ms. Hoelsken for the days she is engaged in identifying documents for production and testifying, in addition to the copying costs.

5.      All objections to the documents set forth in Paragraph 4 above shall be made by April 6, 2007.

6.      If Defendants choose to object to the documents set forth in Paragraph 4 above, Seaton and NICO shall have five (5) business days to respond to such objections.

7.      The Arbitration Panel's decision with regard to any objections raised by Defendants with respect to the documents set forth in Paragraph 4 above shall be final as to all parties.

8.      After the Arbitration Panel has ruled on the discoverability of any documents objected to pursuant to Paragraph 4 above, Defendants will make such documents as are ruled discoverable available within two weeks of the Panel's ruling.

9.      All documents objected to by Defendants and subsequently ruled discoverable by the Arbitration Panel are subject to the confidentiality and use restrictions as set forth in Paragraph 3 above.

10.     Ms. Hoelsken shall provide oral testimony as compelled by the Hoelsken Subpoena at a hearing before the arbitrators or at a deposition in Boston on a date mutually agreed-upon by the parties in May 2007.

11.     Seaton is entitled to seven hours of testimony from Ms. Hoelsken, which may be videotaped.

12.     Ms. Hoelsken's testimony shall be limited to a single day and she will not be required to testify again at the hearing on the merits in either the Seaton Arbitration or the Stonewall Arbitration.

13.     Seaton will confer with NICO in an attempt to resolve all document issues without the need for a document custodian deposition.

14.     Seaton, however, reserves the right to take the deposition of Cavell's custodian of records and Cavell agrees to provide same by a date mutually agreed-upon by the parties in May 2007.

3

RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI LLP
*and*
PEPE & HAZARD, LLP

EDWARDS ANGELL PALMER
& DODGE LLP


By:  Michael R. O'Donnell
RIKER, DANZIG, SCHERER, HYLAND
& PERRETTI LLP
*and*
PEPE & HAZARD, LLP
Attorneys for Plaintiff,
Seaton Insurance Company

Dated:  March __, 2007

By:  Vincent J. Vitkowsky
EDWARDS ANGELL PALMER
& DODGE LLP
Attorneys for Defendants,
Cavell USA Inc. and
Pamela Hoelsken

Dated:  March 26, 2007


SO ORDERED:


Hon. Alan H. Nevas
United States District Judge

4