**EXHIBIT N**

Ira G. Greenberg
Vincent J. Vitkowsky
EDWARDS ANGELL PALMER & DODGE LLP
Attorneys for Defendants
750 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 308-4411

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEATON INSURANCE COMPANY and STONEWALL INSURANCE COMPANY,<br><br>                     Plaintiffs,<br><br>vs.<br><br>CAVELL USA INC. f/k/a KEN RANDALL AMERICA, INC. f/k/a EASTGATE, INC. and KEN RANDALL, individually,<br><br>                     Defendants. | Case No. 1:07-CV-07032 (RMB) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

        EDWARDS ANGELL PALMER & DODGE LLP
        **Attorneys for Defendants**

        By: _/s/ Ira Greenberg_
        Ira G. Greenberg
        Vincent J. Vitkowsky
        EDWARDS ANGELL PALMER & DODGE LLP
        750 Lexington Avenue
        New York, New York 10022
        (212) 308-4411

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

OVERVIEW ..................................................................................................................... 1

ESSENTIAL FACTUAL BACKGROUND ................................................................... 2

ARGUMENT .................................................................................................................... 5

    I.    The Complaint Should be Dismissed For Improper Venue Based on the Forum Selection Clause in the Term Sheet, or, in the Alternative, Dismissed for Lack of Subject Matter Jurisdiction ............................................................................................ 5

    II.   The Complaint Fails to State a Claim Upon Which Relief Can be Granted ........... 8

CONCULSION ............................................................................................................... 11

281751

## TABLE OF AUTHORITIES

Cases

Annis v. County of Westchester, 36 F.3d 251 (2d Cir. 1994) ............................................. 8
Commercial Mortgage Corp. v. LaSalle Bank Nat'l Ass'n, 242 F. Supp. 2d 279
    (S.D.N.Y. 2002) .............................................................................................................. 5
Damigos v. Falnder Compania Naviera, S.A., 716 F. Supp. 104 (S.D.N.Y. 1992) ............ 6
GMAC Commercial Mortgage Corp. v. Lasalle Bank Nat'l Ass'n, 242 F. Supp. 2d 279
    (S.D.N.Y. 2002) ........................................................................................................... 5, 7
Kingsway Fin. Serv., Inc. v. Pricewaterhouse Coopers, LLP, 420 F. Supp. 2d 228
    (S.D.N.Y. 2005) .............................................................................................................. 7
Liberty USA Corp. v. Buyer's Choice Ins. Agency, LLC, 386 F. Supp. 2d 421 (S.D.N.Y.
    2005) ............................................................................................................................... 8
Lombardozzi v. Debroux, 1992 WL 246872 (N.D.N.Y. Sept. 23, 1992) ................. 5, 6, 7, 8
Mdpower Comm. Corp. v. Voipld.com, Inc., 304 F. Supp. 473 (W.D.N.Y. 2004) ............ 5
Moses v. Business Card Express, Inc., 929 F.2d 1131 (6th Cir. 2001) .............................. 7
M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907 (1972). ......................... 6
Roby v. Corporation of Lloyd's, 996 F.2d 1353 (2d Cir. 1993)........................................... 5
Sicari v. J.C. Penney Corp., Inc., 2005 WL 3440693 (S.D.N.Y. Dec. 15, 2005) ............... 6

Statutes

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 1, 8
Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 8
Fed. R. Civ. P. 12(b)(3) ........................................................................................................ 1

281751

## **INTRODUCTION**

Defendants Cavell USA Inc. f/k/a Ken Randall America, Inc. f/k/a Eastgate, Inc. ("Cavell US") and Ken Randall, individually ("Randall") (collectively, "Defendants"), respectfully submit this Memorandum of Law in support of their motion to dismiss the complaint filed in this action by Seaton Insurance Company and Stonewall Insurance Company (collectively, the "Companies").

## **OVERVIEW**

This case involves an action that should never have been commenced in this Court. The parties have expressly agreed to resolve any and all disputes arising from their commercial relationships in England, pursuant to English law. Even so, it is clear from the allegations in the complaint that there is no basis upon which the Companies can be granted the relief sought. As such, and for the reasons set forth below, the complaint should be dismissed.

First, the claims asserted against Defendants are subject to and governed by a mandatory forum selection clause contained in an agreement by which the parties agreed to submit to the exclusive jurisdiction of the English courts and have the merits of any dispute governed by English law. Thus, the complaint should be dismissed for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Alternatively, the Court should also exercise its power to decline jurisdiction over this matter as a means of enforcing the forum selection clause, and dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Next, if the Court were to retain jurisdiction, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be

granted. The Companies' causes of action against Defendants sound in fraud and are based upon Defendants' cession of certain claims functions to the Companies' reinsurer, National Indemnity Company ("NICO"). Defendants, however, had unlimited authority under the contracts at issue to delegate claims functions to any third-party they chose, including NICO. Thus, it is clear from the complaint that the Companies' have no legitimate basis for a claim against Defendants, as their sub-delegation of certain claims-related functions to NICO was expressly agreed to and allowed by the Companies.

## ESSENTIAL FACTUAL BACKGROUND

Insurance companies that are no longer issuing new policies, but rather merely administering and paying claims on policies already issued, are referred to as being "in run-off." Cavell US provides run-off services to such companies and their owners. Randall is Chairman of Cavell US.

In March 1999, Cavell US (then known as Eastgate Inc.) entered into an Agreement Relating to Administration of Run-Off Business with Seaton (then known as Unigard Insurance Company) (the "Seaton Administration Agreement"), which was in run-off and had been acquired by Dukes Holdings LP ("Dukes Place"). See Complaint, Ex. 2.

In September 2000, Cavell US entered into an Agreement Relating to the Administration of Run-Off Business with Stonewall (collectively, with the Seaton Administration Agreement, the "Administration Agreements"), which was in run-off and had also been acquired by Dukes Place. See Complaint, Ex. 1.

Under the Administration Agreements, the Companies' authorized Cavell US to perform certain services in connection with the Companies' run-off. See Complaint, Exs.

1 & 2, Schedule 1. The Companies also provided Defendants with unfettered authority to delegate their obligations under the Administration Agreements to anyone they chose, to the extent Defendants deemed it was necessary:

> Eastgate (Cavell US) shall have the authority to delegate to any person such functions as it deems necessary for the performance of its obligations under this Agreement.

See Complaint, Exs. 1 & 2, ¶8.1. To that end, the Seaton Administration Agreement specifically references the involvement of a third-party, NICO, in the claims-related functions of the Companies:

> Eastgate [Cavell US] will provide a representative of NIC [NICO] with full time access to the Company's [Seaton] offices and records and to allow such representative to monitor the payment of claims and to assist Eastgate and the Company in the settlement of such claims. In addition, Eastgate will pay NIC for all salary, benefits and like costs and expenses associated with such representative...

Complaint, Ex. 2, ¶2.3.

Prior to their entry into the Administration Agreements, the Companies' entered into certain reinsurance contracts with NICO (the "Reinsurance Agreements") in connection with their run-off. See Complaint, ¶¶13, 25.[1] The Reinsurance Agreements are referred to in the Administration Agreements and expressly delegate certain claims administration powers to NICO, including:

- Complete control over the retention of any third-party entity to handle and administer the Companies' claims. (Hoelsken Decl., Ex. A, Art. 4(H), 11(C), Ex. B, Art. 4(F), 11(D), Ex. C, Art. 5(H), 12(C));

---

[1] Copies of the Reinsurance Agreements are annexed as Exs. A, B & C to the Declaration of Pamela S. Hoelsken ("Hoelsken Decl.").

- The right to associate in the adjustment of all claims and approve claims over $250,000 and $150,000, respectively. (Id., Ex. A, Art. 11(A-B), Ex. B, Art. 11(A-B), Ex. C, Art. 12(A-B));

- The right to approve policy buybacks and commutations of assumed reinsurance over $250,000 and for all commutations of ceded reinsurance. (Id., Ex. A, Art. 11(B), Ex. B, Art. 11(B), Ex. C, Art. 12(B));

- In the event of Dukes Place selling more than 50% of the voting securities of the reinsured then NICO shall have the right to become the claims servicer until cover provided by the Reinsurance Agreements was exhausted (Id., Ex. A, Art. 11(C), Ex. B, Art. 11(D), Ex. C, Art. 12(C)); and

- That NICO would establish and maintain a claims account for each of the Companies, for the payment of claims in an amount sufficient to fund the payment of claims as they fall due from time to time (Id., Ex. A, Art. 20(C), Ex. B, Art. 20, Ex. C, Art. 21(C)).

Thereafter, Cavell US entered into an agreement with NICO known as the "Collaboration Agreement," through which certain claims administration services related to the Companies run-off were sub-delegated to NICO. See Complaint, Ex. 3. Cavell US continued to perform its obligations under the Administration Agreements and provide run-off services to the Companies until early 2006, when Defendants, among others, agreed to a commercial disengagement with the Companies and Dukes Place pursuant to a document described as the "Term Sheet." See Complaint, Ex. 4.

The introductory paragraph of the Term Sheet establishes its broad ambit and indicates that the purpose of the agreement was to govern "the orderly termination of the contractual and other commercial relationships amongst them," including the Administration Agreements. Id., page 1, first sentence. Under the Term Sheet, the Companies agreed, among other things, that: (1) the Administration Agreements would terminate on March 31, 2006 by mutual consent and without cause; and (2) the

281751

Companies would release and forever discharge Defendants of all actions, causes of action, suits, claims and demands arising out of or in connection with any business, commercial, contractual or other arrangement between them (including the Administration Agreements), except in the case of fraud. Id., ¶¶12, 13.

The Term Sheet also contains a mandatory forum selection clause, which provides that it "shall be governed by and construed in accordance with English law and the parties submit to the exclusive jurisdiction of the English courts." Id., ¶29.

## ARGUMENT

### I. The Complaint Should be Dismissed For Improper Venue Based on the Forum Selection Clause in the Term Sheet, or, in the Alternative, Dismissed for Lack of Subject Matter Jurisdiction

The forum selection clause in the Term Sheet contains express language mandating that England is the exclusive forum for any and all disputes arising from the parties' contractual relationships. Such "language of exclusion" is generally deemed mandatory and enforceable, unless it can be clearly shown that the clause was fraudulently induced or that enforcement would be unreasonable or unjust. GMAC Commercial Mortgage Corp. v. LaSalle Bank Nat'l Ass'n, 242 F. Supp. 2d 279, 282-83 (S.D.N.Y. 2002) (Berman, J.); Lombardozzi v. Debroux, 1992 WL 246872, at *4 (N.D.N.Y. Sept. 23, 1992).

The Second Circuit has a strong policy of enforcing mandatory forum selection clauses and a party opposing enforcement must demonstrate exceptional facts in order to be relieved of its contractual duty to resolve a dispute in a particular jurisdiction. Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1359, 1362 (2d Cir. 1993); Mdpower Comm. Corp. v. Voipld.com, Inc., 304 F. Supp. 473, 475-76 (W.D.N.Y. 2004). This principle

applies with even greater force where, as in this case, the transaction is international in character. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916 (1972).

Here, the Term Sheet encompasses all commercial and contractual agreements between the Defendants and the Companies, including the Administration Agreements. See Complaint, Ex. 4, first sentence & ¶13. Indeed, pursuant to the Term Sheet, the Companies released and forever discharged Defendants from all lawsuits or claims arising out of or in connection with their commercial relations, past or present, as of the date of the Term Sheet. Id., ¶13. Thus, since the Companies' claims relate to contracts governed by the Term Sheet, such claims are subject to the mandatory forum selection clause contained therein. See Sicari v. J.C. Penney Corp., Inc., 2005 WL 3440693, at *4-5 (S.D.N.Y. Dec. 15, 2005); Damigos v. Falnder Compania Naviera, S.A., 716 F. Supp. 104, 106-07 (S.D.N.Y. 1992); Lombardozzi, 1992 WL 246872, at *2-4.

For example, in Sicari the Southern District of New York analyzed a forum selection clause with language nearly identical to the Term Sheet and, while not specifically ruling on the issue, noted that if the party seeking enforcement could show that the dispute "involved events governed by either of the documents containing the forum selection clause, the Court would no doubt dismiss the action...." 2005 WL 3440693, at *4-5. The court further noted that the defendant was only required to show that the dispute fell within the parameters of the contract that contained the forum selection clauses in order for that clause to be enforced. Id. See also Damigos, 716 F. Supp. at 106-07 (where the plaintiffs were parties to an agreement with an exclusive forum selection clause providing that disputes arising under certain contracts between the

plaintiffs and defendant were "governed by Greek law and must be brought in a Greek court," the court dismissed the New York action).

Similarly, in Lombardozzi, the defendant argued that an exclusive forum selection clause contained in a settlement agreement between the parties was inapplicable to the plaintiffs' claims because such claims were based not on the settlement agreement itself, but rather an underlying guarantee, which did not have a forum selection clause. The court disagreed, holding that since the defendant's obligations under the guarantee were governed by and made pursuant to the settlement agreement, at least one portion of the dispute arose out of that agreement, implicating the forum selection clause. 1992 WL 246872 at *3-4. See also Moses v. Business Card Express, Inc., 929 F.2d 1131, 1139-40 (6th Cir. 2001) (noting that the phrase "governed by" in a forum selection clause should be interpreted broadly, such that the clause applies to all claims encompassed by the contract, including claims of fraud and misrepresentation, and not merely the construction of the contract itself).

It is clear that claims asserted against Defendants relate to their obligations under the Administration Agreements, which are governed by the Term Sheet. Thus, pursuant to the mandatory forum selection clause, any dispute between the parties is subject to the exclusive jurisdiction of the English courts.[2]

---

[2] Notably, the Companies rely upon the "non-exclusive jurisdiction" language of the Seaton Administration Agreement to support their election of New York as forum to resolve this dispute. See Complaint, ¶10 and Ex. 2, ¶15.7.1. New York courts have routinely deemed such language as "permissive," and such a clause will not be enforced unless the parties can prove that it was their intent to make that jurisdiction exclusive, which the Companies cannot. Kingsway Fin. Serv., Inc. v. Pricewaterhouse Coopers, LLP, 420 F. Supp. 2d 228, 234 (S.D.N.Y. 2005) (Berman, J.); GMAC Commercial Mortgage Corp., 242 F. Supp. 2d at 283, n.8.

281751

Alternatively, the complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. A federal court "has the power to decline jurisdiction as a means of enforcing a valid forum selection clause in a contract, and… the weight of authority leans in favor of enforcing valid forum selection clauses." Liberty USA Corp. v. Buyer's Choice Ins. Agency, LLC, 386 F. Supp. 2d 421, 422-24 (S.D.N.Y. 2005); Lombardozzi v. Debroux, 1992 WL 246872, at *3.

In Liberty USA Corp., the court granted a defendant's Rule 12(b)(1) motion to dismiss on the grounds that a forum selection clause in an asset purchase agreement controlled over a forum selection clause in a promissory note. 386 F. Supp. 2d at 424-25. Notably, the court focused on the fact that (a) the promissory note was expressly incorporated into the asset purchase agreement and (b) the promissory note's forum selection clause was also superceded by the forum selection clause in the asset purchase agreement. Id. at 426.

Here, the Administration Agreements are substantively incorporated into and superceded by the Term Sheet. See Complaint, Ex. 4, page 1, first sentence & ¶13. Therefore, the Court should decline jurisdiction and enforce the forum selection clause in the Term Sheet.

## II. The Complaint Fails to State a Claim Upon Which Relief Can be Granted

If the Court were to retain jurisdiction over this action, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Annis v. County of Westchester, 36 F.3d 251, 253 (2d Cir. 1994).

The Companies' claims are based upon Defendants' sub-delegation of certain claims functions to NICO. Specifically, the claims derive from three alleged sets of acts and non-disclosures:

(1) On or around the time the Seaton Administration Agreement was signed (March 1999), Defendants and NICO entered into an "oral pre-funding agreement," the effect of which was to cede control of claims to NICO (Complaint, ¶¶ 22, 28, 35, 48);

(2) From the time the Administration Agreements were executed in March 1999 (Seaton) and September 2000 (Stonewall), Defendants had planned to cede control of the administration of the Companies' claims to NICO and ultimately entered into the Collaboration Agreement in August 8, 2001 (Id., ¶¶21, 35-42); and

(3) During the re-negotiations of the Administration Agreements in January 2004, Defendants failed to disclose NICO's involvement in claims handling to the Companies (Id., ¶¶43-46).

The Companies, however, provided Defendants with broad authority to delegate the Companies' claims functions to any entity or person that Defendants deemed appropriate to perform their obligations under those agreements. See Complaint, Exs. 1 & 2, ¶8.1. To that end, the Seaton Administration Agreement explicitly references NICO's involvement in claims-related functions and provided NICO with the right to assist Cavell US in the monitoring, payment and settlement of the Companies' claims. See Complaint, Ex. 2, ¶2.3. Thus, the Companies' cannot assert any cognizable action based on Defendants' cession of certain claims controls to NICO, as it was expressly agreed to and allowed by the Companies—sophisticated business entities negotiating the transaction at arms-length.

Moreover, the Companies knew at the time they entered into the Administration Agreements that they had already delegated certain claims administration powers to

281751

NICO under the Reinsurance Agreements. See discussion at pp. 3-4. For example, the Companies' authorized NICO to establish a claims account for purposes of funding the payment of claims as they fell due upon the Companies—the very same "pre-funding" process that the Companies assert constitutes fraud on the part of Defendants. See Ex. A, Art. 20(C), Ex. B, Art. 20, Ex. C, Art. 21(C) and Complaint, ¶¶22, 28, 35, & 48. The Companies' also granted NICO the right to adjust, monitor and approve claims settlements and payments. See discussion at p. 4. To the extent the Companies wanted to prevent NICO, or any other reinsurer, from acquiring further claims-related authority, they could have sought the inclusion of such a provision in the Administration Agreements. They chose not to, and, to the contrary, agreed that Cavell US could sub-delegate its obligations under the Administration Agreements to any entity it chose. See Complaint, Exs. 1 & 2, ¶8.1.

For these reasons, the Companies have failed to state a claim upon which relief can be granted and the complaint should be dismissed.

## **CONCULSION**

The Companies are bound by the express language in the Term Sheet and should not be allowed to avoid their agreement to resolve any and all disputes arising from the parties' commercial relationships in England. Moreover, it is beyond doubt that the Companies have failed to state a claim upon which relief can be granted. The Administration Agreements provided Defendants, and Defendants only, with unlimited discretion to delegate their obligations under those agreements, as they deemed necessary, to any third-party. Thus, and for the reasons set forth above, Defendants motion to dismiss should be granted and the Court should award Defendants all costs associated with this motion.

Dated: New York, New York
       October 19, 2007

                                    Respectfully submitted,

                                    _____
                                    Ira G. Greenberg
                                    Vincent J. Vitkowsky
                                    EDWARDS ANGELL PALMER &
                                    DODGE LLP
                                    Attorneys for Defendants
                                    750 Lexington Avenue
                                    New York, New York 10022
                                    (212) 308-4411

## CERTIFICATION

A copy of the foregoing motion, defendant's memorandum of law in support of their motion to dismiss, the Declaration of Pamela S. Hoelsken, dated October 19, 2007 and a Rule 7.1 Statement are being served upon counsel for the plaintiffs via federal express this 19th day of October, 2007:

John F. Finnegan, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

Shawn L. Kelly, Esq.
Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962

_____
Vincent J. Vitkowsky