(Electronically Filed)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEATON INSURANCE COMPANY and STONEWALL INSURANCE COMPANY,<br><br>              Plaintiffs,<br><br>-against-<br><br>CAVELL USA INC. f/k/a KEN RANDALL AMERICA, INC. f/k/a EASTGATE, INC. and KEN RANDALL, individually,<br><br>              Defendants. | Case No.: 07-cv-07032 (RMB) (KNF) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO ENJOIN DEFENDANTS FROM
PROSECUTING THE SAME CLAIMS IN A FOREIGN ACTION**

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
(212) 504-6000

RIKER, DANZIG, SCHERER, HYLAND &
PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
(973) 538-0800

Attorneys for Plaintiffs, Seaton Insurance Company
and Stonewall Insurance Company

Dated:     March 25, 2008

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

    A.    Defendants Do Not Seriously Dispute That The Threshold Factors For Issuing An Anti-Suit Injunction Have Been Satisfied ......................... 2

    B.    Each Of The *China Trade* Factors Demonstrates That Defendants Should Be Enjoined From Proceeding With The UK Action ................... 2

        1.    The UK Action Threatens This Court's Jurisdiction ..................... 3

        2.    The UK Action Seeks To Evade The Public Policies Of New York ................................................................................... 4

        3.    The UK Action Is Vexatious ......................................................... 6

        4.    Delay, Inconvenience, Expense, Inconsistency And/Or A Race To Judgment Would Result If The UK Action Were Allowed To Proceed .................................. 7

        5.    Allowing The UK Action To Continue Would Prejudice A Number Of Equitable Considerations ........................................ 8

    C.    Plaintiffs' Motion To Enjoin Is Not Moot ................................................ 9

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

China Trade & Dev. Corp. v. M.V. Choong Yong,
   837 F.2d 33 (2d Cir. 1987)........................................................................................ 3, 4

Ibeto Petrochem. Indus. Ltd. v. M/T Beffen,
   475 F.3d 56 (2d Cir. 2007)........................................................................................ 8, 9

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,
   500 F.3d 111 (2d Cir. 2007)...................................................................................... 6-8

Laker Airways Ltd. v. Sabena, Belgian World Airlines,
   731 F.2d 909 (D.C. Cir. 1984) ..................................................................................3-5

Quaak v. Klynveld Pear Marwick Goerdeler Bedrijfsrevisoren,
   361 F.3d 11 (1st Cir. 2004) ........................................................................................ 4

Plaintiffs submit this reply memorandum of law and the accompanying Reply Declaration of Elizabeth Butler (the "Reply Decl.") in further support of their motion to enjoin Defendants from prosecuting the same claims in the UK Action.[1]

## INTRODUCTION

Through the instant motion, Plaintiffs seek an order enjoining Defendants from proceeding with an action that they initiated in the UK after the commencement of this NY Action. The UK Action seeks, via declaratory relief, a finding of "no liability" under the fraud claims raised by Plaintiffs in this action. In their Opposition, Defendants do not seriously dispute that the same basic issues are raised by the NY and UK Actions. Nor do they deny that the UK Action may be used to effectively trump any adverse result in the NY Action. Instead, Defendants contend that such gamesmanship is permissible in *in personam* disputes. As discussed in detail below, not only is Defendants' view of the law incorrect, but they have also failed to demonstrate that an injunction is not warranted under the facts and circumstances of this case: First, Defendants have effectively conceded that the two actions involve the same parties and the same ultimate issues, thereby establishing the threshold requirements for the issuance of an anti-suit injunction. See Point I. Second, all five of the discretionary factors that the Court is to consider in determining whether to issue the injunction weigh strongly in favor of injunctive relief here. See Point II. Third, the requested relief has not, as Defendants suggest, been mooted by the interim stay issued in the UK Action. In fact, the need for an anti-suit injunction has only

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in Plaintiffs' memorandum of law in support of their motion to enjoin defendants from prosecuting the same claims in a foreign action (the "Moving Brief" or "Mov. Br."). Defendants' memorandum of law in opposition to the instant motion is referred to herein as the "Opposition" or "Opp." References herein to Exhibits refer to the exhibits annexed to the Reply Decl.

been highlighted by the tactics adopted by the Defendants in connection with the issuance of that stay. See Point III.

## ARGUMENT

A. **Defendants Do Not Seriously Dispute That The Threshold Factors For Issuing An Anti-Suit Injunction Have Been Satisfied**

In their Moving Brief, Plaintiffs demonstrated that the NY and UK Actions involve the same parties and seek to resolve substantially the same issues, thereby satisfying the threshold criteria for the issuance of an anti-suit injunction. Mov. Br. at 8-11. And while the Opposition repeatedly refers to the NY and UK Actions as involving the "same" issues (see Opp. at 3) and being "parallel" proceedings (see Opp. at 4, 5, 7, 9), Defendants vaguely contend in a footnote that the actions do not involve the "same" issues because the UK Action "includes . . . a breach of contract claim and related issues that a judgment in this action will not necessarily put to rest." See Opp. at fn 1. Defendants do not cite a single legal authority in support of their assertion.[2] Nor do they attempt to distinguish the authorities cited by Plaintiffs or explain the contradictory statements in their own Opposition. Thus, there is no real dispute that the threshold factors have been established, or that it is within this Court's discretion to enjoin Defendants from prosecuting the UK Action.

B. **Each Of The *China Trade* Factors Demonstrates That Defendants Should Be Enjoined From Proceeding With The UK Action**

As set forth in Plaintiffs' Moving Brief, all five of the China Trade factors support the issuance of an anti-suit injunction here. As discussed in detail below, nothing in Defendants' Opposition demonstrates otherwise.

---

[2] In fact, nowhere in the Opposition do Defendants rely on any authority other than a handful of cases cited by Plaintiffs in their Moving Brief.

1.  **The UK Action Threatens This Court's Jurisdiction**

As Plaintiffs demonstrated in their Moving Brief, an anti-suit injunction should issue where, as here, a foreign action represents a threat to a U.S. court's jurisdiction. See Mov. Br. at 12. Defendants do not address this point head on, but rather contend that, pursuant to China Trade, an anti-suit injunction can only issue when a U.S. court's *in rem* or *quasi in rem* jurisdiction is threatened. See Opp. at 4. China Trade, however, stands for no such proposition. Indeed, China Trade explicitly states that an anti-suit injunction may issue in an *in personam* action. China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 37 (2d Cir. 1987) ("[e]ven in *in personam* proceedings, if a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may also be necessary to protect the enjoining court's jurisdiction"). Thus, it is well established that U.S. courts have the authority to enjoin any litigant from pursuing a foreign action that seeks to carve out "exclusive jurisdiction" over the parties' dispute by effectively denying the U.S. court of jurisdiction. See, e.g., China Trade, 837 F.2d at 37; Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 930 (D.C. Cir. 1984) (affirming issuance of anti-suit injunction where "[t]he English action was initiated for the purpose of reserving exclusive prescriptive jurisdiction to the English courts"). This is because such actions are not truly parallel. As the Laker Airways court explained:

> the British and American actions are *not* parallel proceedings in the sense the term is normally used. This is not a situation where two courts are proceeding to separate judgments simultaneously under one cause of action. Rather, the sole purpose of the English proceedings is to *terminate* the America action.

731 F.2d at 930 (emphasis in original).

That the true purpose of the UK Action is to terminate the instant action was made clear in Defendants' recent submission to the UK court, in which Defendants candidly

-3-

admit that they want the UK court to hold that it has "exclusive jurisdiction" over the dispute described in the Complaint in this action. See Ex. 6, ¶ 5(1).[3] Likewise, the Claim Form filed by Defendants in the UK Action explicitly seeks a "declaration that . . . Claimants have no liability to [the Companies] in respect of the claims contained in the Complaint." Mov. Br. at 6. But such claims are clearly designed to evade the jurisdiction of this Court or, at a minimum, to render any judgment in this Action a nullity. See Laker Airways, 731 F.2d at 918 (issuing anti-suit injunction where defendants' foreign action threatened the US court's jurisdiction by seeking, inter alia, declaratory relief that certain "defendants were not engaged in any unlawful combination or conspiracy" and an "injunction prohibiting [defendant] from taking any action in United States courts to redress an alleged violation by the defendants of United States antitrust laws"). Where, as here, a foreign action amounts to a "potential *fait accompli* by the [Defendants] which would . . . virtually . . . eliminate[] the court's effective jurisdiction over [Plaintiffs'] facially valid claim," an anti-suit injunction is warranted. See id. at 930-31.[4]

### 2. The UK Action Seeks To Evade The Public Policies Of New York

Plaintiffs have demonstrated that the UK Action would allow Defendants to frustrate a number of important public policies, including (a) New York's strong interest in

---

[3] In their Opposition, on the other hand, Defendants seek to obfuscate the nature of the UK Action by claiming that the UK Action represents "no threat" to this Court's jurisdiction. See, e.g., Opp. at 4-5.

[4] Unable to distinguish the authority cited in Plaintiffs' Moving Brief, Defendants suggest that the Court should ignore case law from outside of the Second Circuit, such as Laker Airways, as being "immaterial" to the instant motion. See Opp. at 5. In so contending, Defendants ignore the fact that, in China Trade, the Second Circuit cited with approval and adopted the analytical framework of Laker Airways. See, China Trade, 837 F.2d at 35-37. Nor do Defendants offer any rationale for ignoring decisions from other circuits applying the same basic analytical framework, such as Quaak, which relies on the analysis in both China Trade and Laker Airways. See Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 18-20 (1st Cir. 2004).

ensuring that contracts subject to its laws are not procured by fraud; (b) New York's strong interest in enforcing statutes concerning unfair and deceptive business practices; and (c) allowing US plaintiffs to prosecute their action in a US forum. See Mov. Br. at 14-16. Defendants do not seriously dispute that any of the policies referred to in the Moving Brief are not important public policies of this forum.[5] Rather, they argue that the public policies factor should not weigh in Plaintiffs' favor because Plaintiffs have not cited caselaw in which an anti-suit injunction was expressly premised on the violation of the public policies that are at issue here. See Opp. at 6. As a threshold matter, Defendants are incorrect: the anti-suit injunction in Laker Airways was issued in part to enforce domestic laws. See 731 F. 2d at 930. More importantly, however, Defendants fail to recognize that "[t]here are no precise rules governing the appropriateness of anti-suit injunctions. The equitable circumstances surrounding [the] request for an injunction must be carefully examined to determine whether . . . the injunction is required to prevent an irreparable miscarriage of justice." 731 F.2d at 927. Thus, Defendants' suggestion that the Court adopt a rigid analysis runs contrary to the flexible balancing test adopted by China Trade and its progeny.

As for the public policies themselves, Defendants argue that the UK Action was not initiated to evade any laws of New York or Massachusetts, but rather to "take advantage of" certain unspecified "favorable substantive or procedural laws" of England. Opp. at 6.[6] But Defendants' purported intention in bringing the UK Action does not diminish the importance of the laws and public policies of this forum, nor does it provide a basis for Defendants to avoid

---

[5] While Defendants conclusorily refer to these policies as "'alleged' public policies" (see Opp. at 6), they do not attempt to rebut any of the authority recognizing these policies.

[6] Tellingly, Defendants do not deny that the intended effect of the UK Action is to trump any adverse decision issued by this Court or previously issued by the U.S. District Court for the District of Connecticut.

those policies, simply because they would "prefer" to litigate in a different forum. See Laker Airways, 731 F.2d at 933 (affirming issuance of anti-suit injunction, noting that "[f]oreign corporations doing business in the enjoining forum are expected to abide by the forum's laws").

### 3. The UK Action Is Vexatious

Defendants contend that the UK Action is not "vexatious" because it does not threaten to undermine a judgment already rendered by this Court. Opp. at 7-8. In so contending, however, Defendants ignore the substance of Plaintiffs' Moving Brief, which demonstrates that Defendants' UK Action is vexatious because "the primary purpose of the UK Action is to undo any adverse result in this action and to penalize U.S. residents from seeking to enforce their rights in U.S. courts." Mov. Br. at 14. And while the Defendants contend that the UK action is not designed to "punish" Plaintiffs, they do not dispute that the UK Action was designed to "undo" any result in the US action that is deemed adverse to Defendants. See Opp. at 7-8. Such an action is vexatious by nature. See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 111, 126 (2d Cir. 2007) (anti-suit injunction warranted where "the entire point" of the foreign action was "to show that the Arbitral Award must be deemed to be vitiated – i.e., to be a nullity").[7]

The vexatious nature of the UK Action is further demonstrated by the inconsistent positions that the Defendants have taken in the two actions. For example, Defendants have argued to this Court that they should be allowed to proceed with their UK Action because it is nothing more than a "parallel" proceeding that does not seek in any way to "threaten" this

---

[7] Similarly, Defendants contend that it was not their "intention" to "penalize" the Companies for "seeking non party discovery in a prior arbitration proceeding." See Opp. at n. 3. Defendants, however, miss the point: Irrespective of why the UK Action was filed, the fact of the matter is that the question of whether the issuance of the subpoenas violated the Term Sheet has already been litigated and decided by a sister court. See Mov. Br. at 10-11.

-6-

Court's jurisdiction.  See Opp. at 7.  At the same time, however, Defendants have been urging the UK court to decide on an expedited basis the issue of the scope of the Term Sheet's forum selection provision in order to purportedly "resolve finally many of the matters in dispute between the parties", including issues that are currently before this Court on the pending motion to dismiss.  See Ex. 6 at ¶ 7.  Indeed, Defendants go further and imply that the NY Action cannot move forward in the absence of such a determination by the UK court:

> If these proceedings are stayed now, what is the New York court to do?  It is faced with an English law issue, that must be decided by the English court, and which is *a priori* to other questions arising in the New York proceedings (e.g., whether the Claimants were guilty of the conduct complained of).

Ex. 2 at ¶ 57.[8]  Thus, Defendants' own actions demonstrate the vexatious nature of the UK Action and the need for injunctive relief here.

### 4. Delay, Inconvenience, Expense, Inconsistency And/Or A Race To Judgment Would Result If The UK Action Were Allowed To Proceed

Defendants do not deny that Seaton and Stonewall are already facing the inconvenience and expense of re-litigating the same issues in an English court.  Nor do they deny that the UK Action blatantly seeks to avoid any adverse ruling by this Court.  Compare Mov. Br. at 16-17 with Opp. at 7-8.  Instead, Defendants claim that vexatiousness and race to judgment alone do not justify an anti-suit injunction.  See Opp. at 7.  But Plaintiffs do not seek an injunction merely because the UK Action is vexatious or inconvenient; rather, they have demonstrated that the inconvenience and improper gamesmanship inherent in the UK Action are

---

[8]  The Opposition also notes that Defendants have "decided not to" seek an anti-suit injunction against the Companies in the UK Action and suggests that an anti-suit injunction is not a proper remedy under the circumstances.  See Opp. at 5.  In the UK Action, however, Defendants explain that the reason for their change of heart is purely tactical:  they fear that, given the prior proceedings in this litigation, the Court would view such an application as "an aggressive and inappropriate act."  See Ex. 6 at ¶ 12.

two factors that weigh strongly in favor of this Court issuing an anti-suit injunction. See Karaha, 500 F.3d at 119 ("all of the . . . factors should be considered when determining whether an anti-suit injunction is warranted") (emphasis added).

>    **5.   Allowing The UK Action To Continue Would Prejudice A Number Of Equitable Considerations**

Finally, Defendants fail to address in any meaningful way the equitable considerations raised by Plaintiffs. See Mov. Br. at 16. First, Defendants do not dispute that an anti-suit injunction is a proper remedy for a party engaged in forum shopping. Instead, they simply claim that (a) they are not engaged in forum shopping, but only seek to enforce a forum selection provision, and (b) "equitable factors . . . are generally insufficient" by themselves to warrant the issuance of an anti-suit injunction. Opp. at 8. As a threshold matter, it is patently obvious that the forum selection clause is inapplicable to Plaintiffs' claims here because fraud is expressly excluded from the ambit of the Term Sheet. Mov. Br. at 8-10.[9] Second, Plaintiffs do not contend that an injunction should issue only because the Defendants are engaged in blatant forum shopping. Rather, Plaintiffs contend that Defendants' forum shopping is yet another factor which demonstrates the propriety of issuing an injunction in this case. See Mov. Br. at 16.

Defendants' attempt to distinguish Ibeto is equally unavailing. According to Defendants, the injunction in Ibeto was issued primarily due to "public policy" considerations, not because of equitable considerations, such as the defendants' forum shopping. However, as the Second Circuit's decision makes clear, its decision to issue an injunction was based on its assessment of all five of the China Trade factors, including equitable considerations. See Ibeto

---

[9] Defendants' contention that Plaintiffs' "motion fails to include any reference to the forum selection clause in section 29 of the Term Sheet, Exhibit 4 to the Complaint" (Opp. at 1) is bizarre, since Plaintiffs refer to the forum selection clause no fewer than three times in the Moving Brief. Mov. Br. at 5, 7.

-8-

Petrochem. Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 64-65 (2d Cir. 2007). Indeed, the Second Circuit explicitly stated that the defendant's forum shopping was an equitable consideration that favored the issuance of an anti-suit injunction. See id. ("equitable considerations such as deterring forum shopping favor the injunction") (emphasis added). Thus, Defendants' forum shopping is yet another factor that militates in favor of the issuance of an anti-suit injunction. Id.

C.    **Plaintiffs' Motion To Enjoin Is Not Moot**

Defendants next contend that Plaintiffs' motion for an anti-suit injunction is moot because the UK court has issued a stay of the UK Action. See Opp. at 2. Defendants' contention misstates both the circumstances surrounding the issuance of the stay and the nature of the stay itself. First, Defendants have contested the issuance of the stay. In particular, on March 11, 2008 – after Plaintiffs filed the instant motion, but before Defendants filed their Opposition – Defendants filed an application with the UK Court, seeking to have the stay set aside. See Ex. 1. Astonishingly, one of the grounds for seeking the reopening of the stay is the purported impact it will have on this action:

> If these proceedings are stayed now, what is the New York court to do? It is faced with an English law issue, that must be decided by the English court, and which is *a priori* to other questions arising in the New York proceedings (e.g., whether the Claimants were guilty of the conduct complained of).

Ex. 2 at ¶ 57. Thus, not only is the relief requested by Plaintiffs not, as Defendants contend, moot, but it is of the utmost urgency, since Defendants are seeking to have the UK court issue expedited determinations on the issues that are already before this Court.

Second, even assuming that the UK court does not reverse its decision to issue the stay, the stay will expire, pursuant to its own terms, when this Court issues its decision on the pending motion to dismiss. Defendants have already provided the UK court with a copy of their application for a hearing on the issue of whether the UK court has exclusive jurisdiction over the

parties' dispute, even though the stay prevents them from formally making the application at this time.  See Exs. 3-5.  Indeed, Defendants have already asked the UK court to consider the application "as soon as the stay is lifted."  See Ex. 4 at ¶ 4.  Thus, it is clear that Defendants intend to continue their backdoor efforts to use the UK Action to attack this Court's jurisdiction, even if this Court denies Defendants' motion to dismiss.  Thus, as Defendants' own actions reveal, the relief sought by Plaintiffs is not moot.

## CONCLUSION

For all of the reasons set forth above and in their Moving Brief, Plaintiffs respectfully request that the Court enter an order enjoining Defendants from prosecuting their UK Action and for such further and other relief as this Court deems appropriate.

Dated:   New York, New York
         March 25, 2008

CADWALADER, WICKERSHAM & TAFT LLP

By:_____ /s/ Elizabeth Butler_____
         Elizabeth Butler (EB-6594)

One World Financial Center
New York, New York 10281
Tel.: (212) 504-6000
Email: liz.butler@cwt.com

Attorneys for Plaintiffs Seaton Insurance Company
and Stonewall Insurance Company

Of Counsel:

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
Tel.: (973) 538-0800