**EXHIBIT 6**

Claimants<br>
Jonathan Jacob Sacher<br>
Second<br>
18 March 2008

**IN THE HIGH COURT OF JUSTICE**

**QUEEN'S BENCH DIVISION**

**COMMERCIAL COURT**

**B E T W E E N:**

(1) CAVELL USA INC

(2) KENNETH EDWARD RANDALL

<u>Claimants</u>

- and —

(1) SEATON INSURANCE COMPANY

(2) STONEWALL INSURANCE COMPANY

<u>Defendants</u>

---

**SECOND WITNESS STATEMENT OF JONATHAN JACOB SACHER**

---

I, JONATHAN JACOB SACHER, of Berwin Leighton Paisner LLP Adelaide House London Bridge London EC4R 9HA, WILL SAY AS FOLLOWS:

**Introduction**

1   I am the same Jonathan Jacob Sacher who made a witness statement in this matter on 11 March 2008. I am duly authorised to make this further witness statement on behalf of the Claimants in support of their application for (i) an order for the trial of a preliminary issue and (ii) the giving of directions in relation thereto. I also explain why the Claimants are not seeking an interim anti-suit injunction restraining the Defendants from pursuing proceedings commenced by them in New York until after

the trial of that preliminary issue, despite having indicated in my first witness statement that they intended to do so.

2. The facts and matters set out in this witness statement are within my knowledge and derived from my conduct of this case; insofar as they are not within my own knowledge, they derive from the documents which I have read on behalf of the Claimants and from information I have received from Mr Randall, the Second Claimant and principal of the First Claimant, and from Ira Greenberg and Vincent Vitkowsky of the Claimants' New York attorneys, Edwards, Angell, Palmer and Dodge LLP. Where the facts and matters set out are within my own knowledge, they are true; otherwise they are true to the best of my knowledge, information and belief.

3. I refer the Court to my first witness statement, which sets out the background to these applications. I adopt the abbreviations used in that statement. I shall also make reference back to various copy documents contained in the exhibit to my first witness statement, "JJS1".

4. I deal below with the Claimants' applications in turn.

(i) **Application for the trial of a preliminary issue**

5. In paragraphs 54-57 of my first witness statement, I drew attention to the fact that the Term Sheet signed by RQIH and Dukes Place in February 2006 includes (i) a provision releasing the parties in respect of all disputes then current between them save in the case of fraud on the part of Randall as defined (clause 13), and an exclusive jurisdiction clause which provides that *"This Term Sheet shall be governed by and construed in accordance with English law and the parties submit to the exclusive jurisdiction of the English Courts"* (clause 29). I drew the Court's attention to the following:

   (1) It is the Claimants' case that on a proper construction of the Term Sheet *all* disputes between the parties, including any claims in fraud against one of the Randall companies or individuals, fall within clause 29 of the Term Sheet and are thus within the exclusive jurisdiction of this Court.

   (2) Although the Claimants do not accept that the claims which are advanced against them in the New York Complaint are claims in fraud (as a matter of English law, which governs the Term Sheet), *even if they are*, they should nonetheless have been brought in the English courts and not in the New York courts.

(3) The principal reason for this is that it is overwhelmingly likely that the parties intended that *all* outstanding disputes between them should be determined in a single forum (a more detailed explanation is given in the affidavit of Stephen Hofmeyr, Q.C. filed in the New York proceedings – see pages 341-354 of "JJS1").

(4) The issue of whether the Claimants' construction of the Term Sheet is correct, or whether claims in "fraud" are outside clause 29 and can be brought in other jurisdictions is obviously a question of English law, as the Defendants have themselves implicitly acknowledged by serving English law evidence in the New York proceedings (see pages 355-363 of "JJS1").

(5) That issue, being an issue of construction of the Term Sheet, is also obviously one which falls within clause 29 of the Term Sheet and is thus one which the parties have agreed to submit to this Court's exclusive jurisdiction.

6   I believe that the question of whether the parties have agreed to submit claims in fraud to the exclusive jurisdiction of the English courts is an issue with which this Court will have to grapple at some stage in these proceedings. But it is in the interests of the parties and the ends of justice for it to be dealt with at an early stage. I say this for the following reasons.

7   First, it will assist the New York Court if that issue is determined at an early stage. As matters stand, the New York Court has to address a question which, as I have said, is on any view one for this Court to determine under English law. If the New York Court has the benefit of a judgment from this Court on that issue, it will be assisted in determining the way forward in the proceedings that are before it. Secondly, a determination of the issue by this Court is likely to resolve finally many of the matters in dispute between the parties, particularly if the Claimants' case is preferred. Thirdly, I believe that the issue which the Claimants have identified is one which the Court can resolve quickly, cost-effectively and with the need for no further disclosure (full and wide ranging discovery has been given in the New York proceedings) and limited evidence, since it is an issue of construction. I also note that the December 2007 Report of the Commercial Court Working Party on Long Trials encourages the parties to litigation (and the Court) to identify issues that are suitable for trial as preliminary issues.

8   I thus respectfully invite the Court to order that the following issue be tried as a preliminary issue:

*Whether, on a proper construction of the Term Sheet documenting the agreement between Dukes Place Holdings LP and Randall & Quilter Investment Holdings Limited and signed in February 2006 ("the Term Sheet"), and in particular clause 29 thereof, the parties have agreed to submit all disputes {including claims in fraud against Randall (as defined in the Term Sheet)} to the exclusive jurisdiction of the English courts.*

(ii) **Directions**

9   I also respectfully request that the Court give directions for the trial of that issue. Whilst I recognise that this is a matter principally for the Court, the Claimants suggest the following directions:

   (1)   Discovery in the US proceedings to stand as disclosure in this action;

   (2)   Witness statements (in relation only to the preliminary issue), if any, to be exchanged within 7 days of the hearing of these applications;

   (3)   Trial of the preliminary issue to take place on the first available date 7 days after the exchange of witness statements, with an estimate of 1-2 days.

10  If the Court is willing, the Claimants also ask that the issue be directed to be suitable for an expedited trial. If the issue is determined quickly, all parties, and the New York Court, will know where they stand.

(iii) **Reasons for not seeking an interim anti-suit injunction**

11  In my first witness statement at paragraph 68, I stated that it was the Claimants' intention to seek an anti-suit injunction restraining the Defendants from continuing the proceedings in New York until after the determination of the preliminary issue or further order.

12  I have, however, recently been advised by Mr Greenberg of the Claimants' New York attorneys that such an application is likely to be regarded as inflammatory by the New York court, particularly in the light of the fact that the Defendants have themselves (as I mentioned in paragraph 52 of my first witness statement) applied for an anti-suit injunction in New York. Mr Greenberg informs me that an anti-suit injunction issued by this court would most likely not be recognised or enforced by the New York court. Further, he informs me that in his experience such an application may be regarded by that court as an aggressive and inappropriate act.

13  I should make clear that it is not and has never been the Claimants' intention to encroach on the jurisdiction of the New York court. Rather, and as I have sought to explain, the Claimants consider, and I believe, that if the English court determines what is on any view an English law question covered by a jurisdiction agreement in favour of the English court (i.e. whether clause 29 encompasses claims in fraud) this will be of assistance to the New York court. It had been the Claimants' intention to apply for an anti-suit injunction simply to "hold the ring" until the determination of the preliminary issue, rather than to seek to trespass on the New York court's jurisdiction generally. In the light of the advice received from Mr Greenberg, however, the Claimant does not pursue that application.

14  I believe, however, that since an anti-suit injunction would be ineffective and counter-productive, it is all the more important that the preliminary issue identified above be determined on an expedited basis, so that the parties may know where they stand, going forward. I should add that I am advised by Mr Greenberg and believe that the New York court would be likely to recognise and enforce a judgment of this court following a determination of the proposed preliminary issue on the merits.

## Conclusion

15  For the reasons set out above, and to be developed at the hearing of this application, I respectfully ask the Court to grant the relief sought by the Claimants in their application notice.

**STATEMENT OF TRUTH**

I believe that the facts stated in this witness statement are true.

Signed: ..................  Dated: 17 Mar 2008

Claimants
Jonathan Jacob Sacher
Second
18 March 2008

IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

B E T W E E N:

(1) CAVELL USA INC.

(2) KENNETH EDWARD RANDALL

<u>Claimants</u>

– and –

(1) SEATON INSURANCE COMPANY & ANOR

(2) STONEWALL INSURANCE COMPANY

---

SECOND WITNESS STATEMENT OF JONATHAN JACOB SACHER

---

*berwin leighton paisner

Berwin Leighton Paisner LLP
Adelaide House London Bridge London EC4R 9HA
tel +44 (0)20 7760 1000  fax +44 (0)20 7760 1111

12